Clare M. SPAULDING et al.,
Plaintiffs,

v.

Teresa M. DENTON,
Defendant.

Thomas G. RASH, III, et al.,
Plaintiffs,

v.

Teresa M. DENTON,
Defendant.

Richard ANTONIO,
Plaintiff,

v.

Teresa M. DENTON,
Defendant.

Civ. A. Nos. 4581, 4771, 4772.

United States District Court,
D. Delaware.

July 18, 1975.

---

John G. Abramo and E. Leigh Hunt, Abramo, Hunt & Abramo, Wilmington, Del., for plaintiffs.

Ernest S. Wilson, Jr., Wilmington, Del., of counsel; Carl A. Putz, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

## OPINION

LAYTON, District Judge.

A tragedy at sea is the subject of three damage suits in admiralty, which have been consolidated for trial. Before the Court is a motion by one of the plaintiffs for inspection of certain documents pursuant to Rule 37, Fed.R.Civ.P. Defendant responds that these documents do not "contain matters within the scope of Rule 26(b) . . ."[1] because, within the contemplation of Rule 26(b)(3), they were prepared "in anticipation of litigation," and plaintiff has not shown a "substantial need" for them.

The parties agree upon the basic factual background. Defendant's decedent, John Denton, was owner and captain of the yacht Ixtapa. Guests on the Ixtapa's final voyage were plaintiff Antonio, plaintiff Rash, and Harold Spaulding, decedent of plaintiff Spaulding. Also aboard was Juan Puga, a Mexican national. The Ixtapa left the port of Isla Mujeres, on the Yucatan Peninsula, on December 18, 1971, bound for Marathon, Florida. On December 19, somewhere near Cuba, during increasingly stormy weather, she sank. All five voyagers boarded an inflatable life raft. When the raft washed up at Elliot Key, near Miami, on December 29, it contained only Antonio and Rash, both in very poor condition, and Puga.

Defendant's insurer, New Castle Mutual, learned of the disaster, and the attendant loss of life, on December 30. It engaged the Fort Lauderdale, Florida firm of Schmahl and Schmahl, Marine Surveyors and Investigators, to perform an investigation. Schmahl and Schmahl's activity caused it to write three reports in letter form, dated January 10, January 21, and August 11, 1972, to Mr.

---

1. Rule 34(a), Fed.R.Civ.P.

Klippel, an officer of the insurer. These are the reports which defendant claims were prepared in anticipation of litigation.

At the hearing on the instant motion, Mr. Klippel testified. While admitting that it was his company's ordinary course of business to investigate claims, he stated that this particular accident was unique in his company's experience, and that the loss of life indicated substantial claims, and the likelihood of litigation. He said he had consulted with his "reinsurers" in Philadelphia, who suggested that Schmahl and Schmahl be retained to investigate the sinking. He contacted Schmahl and Schmahl, and asked them to find out all they could about what had happened, and why. He could not recall such a thorough investigation by his company of any previous claim. Although the insurer had, in late January, retained counsel to represent Mrs. Denton, counsel did not contact Schmahl and Schmahl, or participate in the investigations which produced the reports in question. On February 29, 1972, Mrs. Denton received a communication from an attorney on behalf of one of the eventual plaintiffs. The first suit was filed on February 13, 1973.

### Anticipation of Litigation

Rule 26(b)(1) makes discoverable "any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."[2] However, Rule 26(b)(3) provides that

. . . a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials [etc.] . . . .

Thus, if the reports were prepared "in anticipation of litigation," plaintiff must make a showing of need. If not, no such showing is required.

The need to resolve this particular question arose with the 1970 Amendments to the Rules. Previously, Rule 34 required that a showing of "good cause" be made for *all* documents sought. Litigation materials were especially immunized if an attorney's "work product," *see Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); but the jurisdictions were split concerning application of the "work product" doctrine to materials prepared by non-attorneys.[3] In abolishing the universal "good cause" requirement, the Amendments made two changes which are relevant here: 1) any distinction between attorney "work product" and non-attorney "work product" was abolished, and 2) instead of "work product," the test became "in anticipa-

2. Despite defendant's protest that material in the reports, except for evaluative portions, is otherwise obtainable by plaintiff, the reports clearly are relevant, though they might be inadmissible at trial. *See* 4 J. Moore, *Federal Practice* ¶ 26.56[3], [4], pp. 26–167, 26–179 (1974 ed.). *See, e. g., Southern Railway Company v. Lanham*, 403 F.2d 119, 131 (5 Cir. 1968); *Falk v. United States*, 53 F.R.D. 113 (D.Conn.1971).

3. *See* Advisory Committee Notes, 48 F.R.D. 487, 500–02; 4 J. Moore, *Federal Practice* ¶ 26.63[8], pp. 26–394—26–407 (1974 ed.). "By 1967, when the Committee undertook the reorganization of all the discovery Rules, the trend had settled in the direction of requiring production of reports and statements made by parties and employees in the regular course of business, or in compliance with the requirements of law, but requiring a showing of good cause in the sense outlined in *Hickman* for production of all materials that were created in the course of trial preparation, and while the matter had not been raised directly in the Supreme Court since *Hickman*, cases imposing the good cause requirement on production of non-lawyer statements had been cited with approval by the Court in *Schlagenhauf v. Holder* [379 U.S. 104 [85 S.Ct. 234, 13 L.Ed.2d 152] (1964)]. This trend was followed in framing Rule 26(b)(3)." *Id.* at 26–405–06.

tion of litigation." Thus, investigative work by non-attorneys was freed from the old "good cause" requirement, but became subject, like material prepared by attorneys, to the single standard of "anticipation of litigation."

The new language has been interpreted in a case which is almost directly on point here. In *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372–73 (N.D.Ill.1972), marine surveyors produced a report for a party's insurer, without the involvement of attorneys and before suit was filed. The Court interpreted the amended rule as meaning

> . . . that *any* report or statement made by or to a party's agent (other than to an attorney, acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4).

*Accord, McDougall v. Dunn*, 468 F.2d 468, 473 (4 Cir. 1972); *Atlanta Coca-Cola Bottling Company v. Transamerica Insurance Company*, 61 F.R.D. 115, 118 (N.D.Ga.1972); *Universal Vendors, Inc. v. Candimat Co. of America*, 16 F.R.Ser. 1329 (E.D.Pa.1972); *Conley v. Graybeal*, 315 A.2d 609 (Del.Super.1974); *Brandywine Shoppe v. State Farm Fire and Casualty Co.*, 307 A.2d 806 (Del.Super. 1973); *Hopkins v. Chesapeake Utilities Corp.*, 300 A.2d 12 (Del.Super.1972). *Cf. Miles v. Bell Helicopter Co.*, 385 F.Supp. 1029 (N.D.Ga.1974).[4]

An opposite resolution of the anticipation - of - litigation/ordinary - course - of business dilemma is that in *Almaguer v. Chicago R.I. & P.R. Co.*, 55 F.R.D. 147, 148–49 (D.Neb.1972). There it was held that

> . . . statements taken by a claim agent immediately after an accident are taken in anticipation of litigation. . . . The anticipation of the filing of a claim against a railroad, when a railroad employee has been injured, or claims to have been injured on the job, is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption.

Although I must agree with *Moore's*[5] that *Thomas's* flat requirement of a lawyer's involvement raises a bump which the 1970 Amendments had smoothed over; adherence instead to *Almaguer* would, in my opinion, go further than pre-Amendment law had gone to immunize materials prepared when litigation is only a contingency. In giving nonlawyers equal status with lawyers for purposes of "anticipation of litigation," it was not the Committee's goal to widen or narrow the scope of the basic "work product" doctrine. Rather, the goal was "to require a showing of relevancy and need for the production of trial preparation materials, whether prepared by an attorney or by the party or his agent." 4 J. Moore, *Federal Practice* ¶26.64[3] (1975 supp.) p. 50. *See* 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2024, pp. 196–199 (1970).

Should any rule-of-thumb approach become the general rule, it is not hard to imagine insurers mechanically forming their practices so as to make all documents appear to be prepared "in anticipation of litigation." This result being contrary to the drafters' intent, Courts would be compelled in any event to look

---

4. "Without underestimating the difficulty of drawing a line between materials prepared in anticipation of litigation and those prepared in the ordinary course of business, this interpretation appears to resurrect under the term 'ordinary course of business' the very

distinction that the 1970 revision was designed to eliminate." 4 J. Moore, *Federal Practice, id.* (1975 Supp.), p. 48.

5. *See* n. 4, *supra.*

at the facts of each case. Thus, the instant motion will be decided without any attempt to state a general rule.

The first and second letters from Schmahl and Schmahl to New Castle Mutual were the result of that company's attempt to find out everything possible, as soon as possible, after the accident. Although Mr. Klippel stated that an outside investigation is unusual for his company, he did not indicate that his company could have handled this claim adequately by their usual methods. In short, indications are that the company's unusual efforts were prompted by the unusual (in their experience) circumstances of the *accident,* not of the *claim.* The insurer knew there would be some sort of claim, but until more was known about the accident, litigation was only a possibility. Indeed, acquisition of such knowledge would appear to have been the purpose of the first two Schmahl and Schmahl reports.

█ The purpose of the August 11 report was different. The claim was seven months old. Each side was represented by attorneys (although Schmahl and Schmahl were not subject to their direction). The insurer had the advantage of the initial reports,[6] and presumably gave new instructions based upon their contents. Given the advantage of prior investigative work, and consultation with lawyers, the insurer's assertion that it was preparing for litigation is credible. I find that the January 10 and 21 reports from Schmahl and Schmahl were not prepared in anticipation of litigation, so are freely discoverable pursuant to Rule 26(b)(1); but that the August 11 report was prepared in such anticipation, so is discoverable only upon a showing of need and hardship pursuant to Rule 26(b)(3).

Plaintiff's showing of need is unconvincing. He has obtained, or readily can obtain, everything in the August 11 report except for the opinions and conclusions of Schmahl and Schmahl. As the Advisory Committee noted,

> (t)he courts have steadfastly safeguarded against disclosure of lawyers' mental impressions and legal theories, as well as mental impressions and subjective evaluations of investigators and claim-agents.

48 F.R.D. at 502. *See Hickman v. Taylor, supra,* 329 U.S. at 510–512, 67 S.Ct. 385; *Southern Railway Company v. Lanham, supra,* 403 F.2d at 131–132. Since it appears that plaintiff's only need for the August 11 report is his wish to know the opinions and conclusions of Schmahl and Schmahl, his motion, insofar as it relates to that document, will be denied.

---

**6.** Indeed, Mr. Klippel testified that his company retained counsel shortly after receiving the second Schmahl and Schmahl report.