The HOME INSURANCE COMPANY, Plaintiff,

v.

BALLENGER CORPORATION (formerly known as Ranger Construction Co.), Defendant.

The HOME INSURANCE COMPANY, Defendant in Counterclaim and Third-Party Plaintiff,

v.

Robert F. SASSER et al., Third-Party Defendants and Additional Defendants in Counterclaim.

Civ. A. No. C76–472A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 25, 1977.

Albert E. Phillips and J. Alexander Porter (Swift, Currie, McGhee & Hiers), Atlanta, Ga., for plaintiff.

Joseph R. Manning and Glenn A. Delk (Morris, O'Brien & Manning), Atlanta, Ga., for Ballenger Corp.

Herman L. Fussell (Stokes & Shapiro), Atlanta, Ga., for Sasser & Sasser & Co., Inc.

James B. Ritchie (Jessee, Ritchie & Duncan), Atlanta, Ga., for Dresco Mechanical Contractors, Inc. & Robert L. Buffington.

MOYE, District Judge.

## ORDER OF COURT

This is a diversity action arising out of alleged fraudulent inducement in connection with a subcontract performance bond and a subcontract labor and material bond.

The facts are as follows: In April 1972, Ballenger Corporation (formerly known as Ranger Construction Company, hereinafter referred to as Ballenger) entered into a contract with the State of Georgia by which Ballenger agreed to act as the prime contractor for the construction of a medical building. In May 1972, Ballenger entered into a subcontract with Dresco Corporation (Dresco). Robert F. Sasser, Sasser & Company, Inc. (Sassers), and Robert L. Buffington (Buffington) were alleged silent joint venturers with Dresco on the subcontract, and apparently so indicated. Dresco was required under the terms of the subcontract to furnish Ballenger with payment and performance bonds. The Home Insurance Company (Home) became the surety on these bonds; Dresco was named as principal and Ballenger was named as obligee. The payment and performance bonds were to bond the performance by Dresco of the subcontract with Ballenger. In connection with the payment and performance bonds, Home required the Dresco-Sasser-Buffington alleged joint venture (hereinafter referred to as Dresco or Sasser) to execute an indemnity and guaranty agreement in Home's favor. Under the terms of that agreement, Dresco agreed to indemnify Home against any loss which it might sustain as a result of issuing the payment and performance bonds.

Subsequent to the execution of the subcontract, the joint venturers commenced performance. Work pursuant to the subcontract with Ballenger continued until September 1975. By letter from Dresco Mechanical Contractors, Inc., the subcontractor voluntarily placed itself in default and requested its bonding company, Home, to take appropriate remedial action. Thereafter Home became actively involved in the completion of portions of the work pursuant to the subcontract entered into by Ballenger and Dresco. Home used the personnel of its principal, the Dresco-Sasser-Buffington joint venture, in attempting to complete performance. Both Home and Ballenger expended certain sums of money in pursuit of this goal. In March 1976, Home ceased work.

The instant action was instituted by the plaintiff, Home, when it filed its complaint against Ballenger on March 11, 1976. Home alleges that it had been discharged, without its knowledge, on the construction contract and performance bonds, upon which defendant Ballenger was named as obligee. Home contends that Ballenger defrauded Home causing it to expend funds under the bonds subsequent to discharge, and seeks recovery of those funds.

Defendant Ballenger answered and counterclaimed against Home. Ballenger's counterclaim alleges that Home has not been discharged from its obligations under the bonds and has failed to honor those allegations; the counterclaim is for breach of the surety bonds.

On June 1, 1976, plaintiff Home answered Ballenger's counterclaim and, as counterclaim-defendant, Home filed a third-party complaint against Dresco, Sassers, and Buffington. The substance of the third-party complaint is that if Home, counterclaim-defendant, is liable to Ballenger, counterclaimant, it is solely in its capacity as surety and that the third-party defendants, Dresco, Sassers, and Buffington agreed to indemnify Home for any loss under the payment and performance bonds.

Ballenger, as counterclaimant, seeks to amend its counterclaim to assert a claim against the third-party defendants impleaded by counterclaim-defendant Home, for breach of the subcontract agreement.

The case is presently before the Court on the following motions: (1) plaintiff Home's motion to strike defendant Ballenger's first amendment to its counterclaim and claim against third-party defendants; (2) two motions of third-party defendants Sassers to strike and to dismiss defendant Ballenger's

amended counterclaim against third-party defendants; (3) two motions of third-party defendant Buffington to dismiss defendant Ballenger's amended counterclaim against third-party defendants; (4) two motions of third-party defendant Dresco to dismiss defendant Ballenger's amended counterclaim against third-party defendants; (5) defendant Ballenger's motion to amend its counterclaim; (6) defendant Ballenger's motion to compel the production of documents; and (7) third-party defendants Sassers' motion to compel answers to interrogatories.

*Motions to Strike and Dismiss Ballenger's Proposed Amended Counterclaim Against Third-Party Defendants*

■ The first wave of motions to dismiss brought by the various third-party defendants and by Home are grounded on Ballenger's failure to comply with Fed.R.Civ.P. 15(a) by filing the amended counterclaim without leave of court. These motions are hereby ORDERED DENIED. Although such action by Ballenger was clearly in violation of Rule 15(a), Ballenger has since refiled its proposed amended counterclaim with a motion to allow it filed as amended. Accordingly, the Court considers the issues of noncompliance with Rule 15(a) as moot and will consider the merits of the more substantive second wave of motions to dismiss brought by the third-party defendants.

The issue before the Court is whether Ballenger, as counterclaimant, may file a claim against the third-party defendants, impleaded by the counterclaim defendant Home, without an independent jurisdictional base. It is undisputed that Ballenger is a citizen of Georgia as are the third-party defendants and, therefore, that there is no diversity of citizenship as between them.

The precise procedural posture of the instant action is unique; neither the parties nor the Court have found a case directly on point. However, third-party practice has elicited much analysis by the courts and an examination of decisions regarding other types of claims in a third-party setting is helpful to understanding the instant situation.

■ Under Fed.R.Civ.P. 14 it is clear that ancillary jurisdiction supports a third-party complaint and that jurisdictional grounds independent from the main action are not necessary. See *Revere Copper & Brass, Inc. v. Aetna Casualty and Surety Co.*, 426 F.2d 709 (5th Cir. 1970). The question which has generated wide judicial attention has been whether a plaintiff may assert a claim against a third-party defendant already impleaded absent independent jurisdictional grounds. Third-party defendants in the instant action contend that the unanimous rule is that such a claim is not allowed and cite 3 Moore's *Federal Practice* ¶ 14.27[1] and the cases cited therein as authority. Third-party defendants further allege that this "unanimous" rule is dispositive of the issue before the Court.

The authority supporting third-party defendants' position is not quite as unanimous as they assert. There is a definite majority and minority opinion and, although the very clear majority opinion is that a claim by a plaintiff against a third-party defendant must be supported by independent jurisdiction, there is a persuasive minority position to the contrary, which, incidentally, is strongly supported by Professor Moore in his treatise cited by the third-party defendants. See 3 Moore's *Federal Practice* ¶ 14.-27[1], p. 14–570.

The minority position, supported by a broad interpretation of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), urges that a federal court has ancillary jurisdiction over all claims that arise out of the same transaction as the main action or a common nucleus of operative facts. See *Morgan v. Serro Travel Trailer Co., Inc.*, 69 F.R.D. 697 (D.Kan.1975); *CCF Industrial Park, Inc. v. Hastings Industries, Inc.*, 392 F.Supp. 1259 (E.D.Pa.1975); 3 Moore's *Federal Practice, supra*; 6 *Federal Practice and Procedure: Civil* § 1444 at p. 231; Holtzoff, "Entry of Additional Parties in a Civil Action," 31 F.R.D. 101, 110 (1962).

The majority view, holding that ancillary jurisdiction will not support a claim by a

plaintiff against a nondiverse third-party defendant, is supported by a variety of reasons. Among them are that: (1) plaintiff should not be allowed, by an indirect route, to sue a co-citizen under diversity jurisdiction when he is not permitted to sue that party directly, *McPherson v. Hoffman*, 275 F.2d 466 (6th Cir. 1960); (2) the majority rule prevents collusion between plaintiff and defendant to obtain federal jurisdiction over a party who would not otherwise be within the court's reach, *Heintz & Co. v. Provident Tradesman Bank & Trust Co.*, 30 F.R.D. 171 (E.D.Pa.1962); (3) the rule which generally does not require diversity as between plaintiff and third-party defendant proceeds on the assumption that the plaintiff is seeking no relief against the third-party defendant, *Stemler v. Burke*, 344 F.2d 393 (6th Cir. 1965); and (4) federal dockets are so overcrowded that the federal courts should not reach out for state law based litigation, *Ayoub v. Helm's Express, Inc.*, 300 F.Supp. 473 (W.D.Pa.1969). See also, *Saalfrank v. O'Daniel*, 533 F.2d 325 (6th Cir. 1965); *Parker v. Moore & Sons, Inc.*, 528 F.2d 764 (4th Cir. 1976); *Kenrose Mfg. Co., Inc. v. Fred Whitaker Co., Inc.*, 512 F.2d 890 (4th Cir. 1972); *Mickelic v. United States Postal Service*, 367 F.Supp. 1036 (W.D.Pa.1973).

The Fifth Circuit Court of Appeals has embraced the majority position in *Fawvor v. Texaco, Inc.*, 546 F.2d 636 (1977);[1] see also *Revere Copper & Brass, Inc. v. Aetna Casualty and Surety Co., supra*. Although the above-mentioned cases representing both majority and minority positions, are not directly on point with the instant procedural situation, that is, a counterclaimant's attempt to assert a claim against a nondiverse third-party defendant impleaded by the plaintiff/counterclaim-defendant, the jurisdictional concepts endorsed by the Fifth Circuit in *Fawvor* merit the Court's consideration.

*Fawvor* involved a negligence claim brought by a Texas citizen against Texaco, Inc., a Delaware corporation. Texaco filed a third-party complaint against B&B Insu-lation Co., a Texas corporation, seeking indemnity. Thereafter, plaintiff asserted a negligence claim directly against B&B. The district court denied B&B's motion to dismiss the plaintiff's claim, 387 F.Supp. 626 (E.D.Tex.1975), and the Fifth Circuit reversed holding that "an independent ground of jurisdiction is necessary in order to support plaintiff's claim against the third-party defendant." 546 F.2d at 642. The Court explicitly rejected the position advocated by Professor Moore, and rejected the plaintiff's claim that ancillary jurisdiction supports the Court's power to consider all claims deriving from a common nucleus of operative facts.

The Fifth Circuit found that the basic principles of diversity jurisdiction established by Article III of the Constitution, 28 U.S.C. § 1332, and *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435, which hold that a plaintiff may not sue one nondiverse defendant along with a diverse defendant, apply with equal force to situations where a defendant files a third-party claim.

The Fifth Circuit followed the rationale of the Supreme Court's recent opinion in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), which, to a limited extent, cut back on the minority's broad interpretation of *United Mine Workers v. Gibbs, supra*. Aldinger brought suit pursuant to 42 U.S.C. § 1983 against various officials of Spokane County individually, as well as against Spokane County, alleging that her discharge violated her constitutional rights. Jurisdiction of the federal claim was asserted under 28 U.S.C. § 1343(3). The § 1983 claim was dismissed as to the County inasmuch as it was not suable as a "person" under § 1983, and the Supreme Court held that the Court had no jurisdiction over the state claims against the County under the doctrine of pendent jurisdiction. In discussing the line of cases leading up to *Gibbs*, the Supreme Court stated:

"These cases, from *Osborn* [*Osborn v. Bank of United States*, 9 Wheat. (22 U.S.) 738, 6 L.Ed. 204] to *Gibbs*, show that in

---

1. The cases supporting the majority view are listed in footnote 7 in the *Fawvor* decision.

treating litigation where nonfederal questions or claims were bound up with the federal claim upon which the parties were already in federal court, this Court has found nothing in Art. III's grant of judicial power which prevented adjudication of the nonfederal portions of the parties' dispute. None of them, however, adverted to the separate question, involved in the instant case, of whether a nonfederal claim could *in turn* be the basis for impleading a party over whom no independent federal jurisdiction exists, simply because that claim could be derived from the 'common nucleus of operative fact' giving rise to the dispute between the parties to the federal claim." [emphasis in original].

427 U.S. at 9, 96 S.Ct. at 2418. The Court went on to distinguish the impleading of a new party from the situation ·in *Gibbs*:

"The situation with respect to the impleading of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is a federal jurisdiction, to implead an entirely different defendant on the basis of a state law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' Ibid. True, the same considerations of judicial economy would be served insofar as plaintiff's claims 'are such that he would ordinarily be expected to try them all in one judicial proceeding. . . . ' Ibid. But the addition of a completely new party would run counter to the well-established principle that fed-

eral courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked· out by Congress. We think there is much sense in the observation of Judge Sobeloff, writing for the Court of Appeals in *Kenrose Mfg. Co., Inc. v. Fred Whitaker Co., Inc.*, 512 F.2d 890, 894 (CA 4 1972):

'The value of efficiency in the disposition of lawsuits by avoiding multiplicity may be readily conceded, but that is not the only consideration a federal court should take into account in assessing the presence or absence of jurisdiction. Especially is this true where, as here, the efficiency plaintiff seeks so avidly is available without question in the state courts.' "

427 U.S. at 14–15, 96 S.Ct. at 2420.

Although the Supreme Court specifically avoided formulating a general, all-encompassing jurisdictional rule and limited its decision in *Aldinger* to issues of pendent party jurisdiction with respect to claims brought under § 1343(3) and § 1983, it also observed that impleading a new party not otherwise subject to federal jurisdiction

"is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence."

427 U.S. at 18, 96 S.Ct. at 2422.

The Fifth Circuit, taking note of this warning, held that the situation in *Fawvor*, where a plaintiff was seeking to join a state law claim against one defendant jurisdictioned on diversity with a state-law claim against a third-party defendant with respect to which no diversity exists, presented an even stronger case for finding no jurisdiction then the situation in *Aldinger*, where plaintiff sought to join a federal claim against some defendants with a state claim against another defendant. The lan-

guage used by the Fifth Circuit indicates that the Court considered plaintiff's attempt to assert a claim against the third-party defendant as an amended complaint joining a state-law claim against a nondiverse defendant with the original claim against the diverse defendant.

■ There are certain features of the instant action which distinguish it from the rationale supporting the requirement of independent jurisdictional grounds for a claim by a plaintiff against a nondiverse third-party defendant. First, the counterclaimant did not initially select this forum, but rather, was involuntarily brought to this forum by the plaintiff's complaint. In *Revere Copper & Brass, Inc. v. Aetna Casualty and Surety Co., supra*, the Fifth Circuit specifically held that a third-party defendant may assert a claim against the nondiverse plaintiff, in part, because the third-party defendant was involuntarily brought into the forum in which the action was filed and should be able to assert all defenses. Second, counterclaimant, having been brought involuntarily into this forum, should be able to assert related claims against other parties to the action rather than being forced to pursue multiple lawsuits in different forums.[2] And third, the Court considers the danger of collusion in this situation as being so attenuated as to be a frivolous reason for refraining from exercising jurisdiction.

■ There is a further matter which significantly distinguishes this case from the situation ruled upon in *Fawvor*. Ballenger's claim has been labelled an "amended counterclaim." A counterclaim must, by definition, arise "out of the transaction or occurrence that is the subject matter *of the opposing party's claim.*" Fed.R.Civ.P. 13(a) (emphasis supplied). Ballenger's claim against the third-party defendants is not directly or indirectly in response to an "opposing party's claim" since none of the third-party defendants have lodged any

claim against Ballenger. Ballenger's claim is more akin to a crossclaim under Rule 13(g). A crossclaim may be asserted by one party against a coparty and generally is asserted by one defendant against another defendant. In *Schwab v. Erie Lackawanna Railroad Co.*, 438 F.2d 62 (3d Cir. 1971), the Court held that a claim by a third-party plaintiff against a third-party defendant could not be characterized as a crossclaim since their only relationship to each other is that of plaintiff and defendant and, therefore, they are not coparties. But that is not the situation here. In the instant action plaintiff Home has asserted claims against both Ballenger and Sasser and, although Ballenger and Sasser are not co-defendants to the original complaint, they both occupy a like status inasmuch as they are both adverse to Home and they are not adverse to each other. The claims asserted by Home against Ballenger and Sasser are basically claims in the alternative. The claim asserted by Ballenger is best construed as a crossclaim under Rule 13(g). Crossclaims closely related to the existing action come within the ancillary jurisdiction of the Court, and independent jurisdictional grounds are not required. *Scott v. Fancher*, 369 F.2d 842, 844 (5th Cir. 1966).

The facts of the case at bar strengthen the argument for the exercise of ancillary jurisdiction. The case arises out of a default by a subcontractor, allegedly Sasser, of the defendant, Ballenger; such subcontractor being the alleged principal in a surety agreement with the plaintiff, Home, who is the obligor, the defendant being the obligee. The Court presently has before it the following claims: (1) that of the obligor, Home, that the obligee, Ballenger, fraudulently induced them to perform work pursuant to the surety arrangement; (2) that of the obligee that the obligor has breached the surety agreement; and (3) that of the obligor that it should be indemnified for any loss under the surety agreement by the principal, Sasser. It is only logical that a

---

2. The Court notes that Ballenger has brought an action in the Fulton County Superior Court in which it asserts in its complaint the counterclaim asserted herein against Home and the claims against the third-party defendants which are the subject of this order. *Ranger (Ballenger) v. Buffington, et al.*, Civil Action No. C17210 (filed April 28, 1976).

breach of contract claim brought by the contractor against the subcontractor also be included; such a claim derives from a common nucleus of operative facts with the other claims and, in the interest of a complete and final resolution of the case, should be resolved along with the other claims. Allowing such a claim to be adjudicated in this action may avoid circuity of actions, and may eliminate the cost, delay, and the burden of additional and unnecessary lawsuits.

It is the delineation of Ballenger's claim against the third-party defendants as a crossclaim which distinguishes it from the *Fawvor* situation, where plaintiff was basically attempting to amend his complaint to assert a claim against the third-party defendant. A situation might conceivably arise wherein a plaintiff asserts a crossclaim against the third-party defendant and, arguably, *Fawvor* would not apply. However, such question is not presently before the Court.[3] In *Revere Copper & Brass, Inc. v. Aetna Casualty and Surety Co., supra*, the Fifth Circuit, limiting its holding to the precise issue before it, stated that application of ancillary jurisdiction to each type of claim which may be asserted by or against a third-party defendant must be decided separately. 426 F.2d at 716.

The Court finds that the exercise of ancillary jurisdiction over the type of claim asserted by Ballenger herein is properly within the discretion of the Court and that exercise of such jurisdiction over Ballenger's crossclaim is merited.

Third-party defendants Dresco and Buffington raise various other claims supporting their respective motions to dismiss. However, the briefs supporting these remaining contentions are completely devoid of any factual or legal argument upon which the Court may base a decision. Accordingly,

the remaining grounds asserted by Dresco and Buffington will not be considered by the Court.

The motions of all third-party defendants to dismiss the "amended counterclaim" of Ballenger against the third-party defendants, construed as a crossclaim, is hereby ORDERED DENIED. Ballenger's motion to "amend its counterclaim," construed by the Court as a crossclaim, is hereby ORDERED GRANTED.

*Ballenger's Motion to Compel the Production of Documents*

Defendant Ballenger seeks the production of the following documents from the plaintiff pursuant to Fed.R.Civ.P. 37(a):

1. Document entitled "Project Investigation" written by Mr. Coleman Enfinger, dated February 17, 1976.

2. Letter, written by Mr. Calvin M. Coolidge of Surety Service Associates to The Home Insurance Company, dated March 3, 1976.

3. Memorandum, written by Mr. Jack Pierce of The Home Insurance Company to Mr. Robert Nolan of The Home Insurance Company, dated January 1, 1976.

4. Cover letter written by Mr. Coleman Enfinger of Surety Services Associates to Mr. Jack Pierce of The Home Insurance Company, dated February 26, 1976. Attached to the cover letter are two documents entitled "Weekly Reports," dated February 20, 1976 and February 26, 1976.

5. Office memorandum of The Home Insurance Company. These documents are office correspondence between the principal office of The Home and either representatives of the reinsurers of The Home. Defendant believes

3. In *Rollins, Inc. v. General Insurance Co. of America*, Civil Action No. C74–1888A (N.D.Ga., July 29, 1975), the Court decided to ignore the precise alignment of the parties respecting their claims against one another. The Court held that a third-party defendant was permitted to assert a claim against a nondiverse plaintiff, but that the plaintiff was not allowed to then

assert a compulsory counterclaim, generally within the court's ancillary jurisdiction, against the third-party defendant absent independent jurisdictional grounds because of the great weight of authority prohibiting a plaintiff from asserting a claim against a third-party defendant absent independent jurisdiction.

that the author of these memos is Mr. Robert Nolan.

Plaintiff Home has agreed to produce Items No. 1 and 4 and, therefore, the motion to produce as to these documents is now moot. However, Home does object to the production of Items No. 2, 3, and 5.

Plaintiff contends that Items 2 and 3 were prepared in anticipation of and preparation for trial and are not discoverable under Fed.R.Civ.P. 26(b)(3). Furthermore, plaintiff contends that Items 2, 3, and 5 are replete with opinions and evaluations of agents of plaintiff Home regarding specific files and are not relevant to this litigation and, therefore, not discoverable under Rule 26(b)(1).

Plaintiff asserts that document 2 is an itemization of potential costs of litigation prepared by Mr. Calvin Coolidge following his meeting with attorney Albert E. Phillips, who was representing Home at the time of this meeting.

Plaintiff states that document 3 is a report to the home office of plaintiff from the regional claims supervisor, Mr. Pierce, communicating his impressions of the status of the subject construction job. The report notes that due to certain specified problems on the job the regional supervisor anticipated that litigation would be forthcoming.

■ Rule 26(b)(3), as amended, provides that materials "prepared in anticipation of litigation or for trial" are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." The 1970 amendment to subdivision (b)(3) reflected the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf. See Advisory Committee Notes to the 1970 amendment to the discovery Rules, 48 F.R.D. 487, 501–02 (1970). Furthermore,

documents which have been prepared before litigation has formally commenced are protected if there is a substantial probability that litigation will occur and that commencement of such litigation is imminent. *Miles v. Bell Helicopter Co.*, 385 F.Supp. 1029, 1033 (N.D.Ga.1974).

■ The Court finds that plaintiff has made the necessary allegations respecting documents 2 and 3 to bring them under the protection of Rule 26(b)(3). Defendant has not made the special showing of need required by Rule 26(b)(3) to entitle it to discover the documents in dispute. Accordingly, the Court rules that Items 2 and 3 are not presently discoverable under Rule 26(b)(3) and the defendant's motion to compel as to Items 2 and 3 is hereby ORDERED DENIED.

Plaintiff claims that Item 5 is not discoverable under the terms of Rule 26(b)(1), that is, it is not relevant to the subject matter involved in the instant action. Plaintiff contends that discovery of internal evaluation of files by insurance company personnel has been "emphatically rejected." Plaintiff cites two cases in support of this "emphatic" rejection. *Union Carbide Corp. v. Travelers Indemnity Co.*, 61 F.R.D. 411 (W.D.Pa.1973), held that an insurance carrier's reserve against liability asserted either in the principal case or in collateral claims is not discoverable. And in *Ballard v. Allegheny Airlines, Inc.*, 54 F.R.D. 67 (E.D.Pa. 1972), the court held that interrogatories seeking the name of the insurance company employee handling the case and seeking the insurers' attitudes toward questions of coverage go beyond the scope of permissible discovery.

■ Ballenger claims that the documents included under Item 5 are relevant but does not state what they contain that is relevant or its specific need for such documents. A general allegation of relevancy is not sufficient to overcome specific objections by an adverse party. However, the plaintiff does not state the precise nature of the contents of Item 5 either, other than to claim that it is replete with evaluations and opinions of Home's agents as to certain insurance files.

It does not appear to the Court that the attitudes and evaluations of Home's agents regarding certain insurance files is permissibly discoverable. Those portions of the documents included under Item 5 which involve such evaluations and opinions may be deleted by plaintiff and the remaining contents, if any, are to be provided to the defendant. Accordingly, subject to the above-mentioned deletions, defendant's motion to compel production with respect to Item 5 is hereby ORDERED GRANTED.

Defendant Ballenger's motion to compel the production of documents is, therefore, hereby ORDERED DENIED IN PART AND GRANTED IN PART. Inasmuch as plaintiff's opposition to the motion was substantially justified, the defendant shall not be allowed to recover the reasonable expenses incurred in filing the motion.

*Motion of Third-Party Defendants Robert F. Sasser and Sasser & Co., Inc., to Compel Answers to Interrogatories*

The Court defers ruling on this motion until such time as the parties have complied with Local Rule 91.62.

SO ORDERED.