**Boyd MULLINS and Linda Mullins, Plaintiffs,**

v.

**Ghassem VAKILI, M.D., Defendant.**

Superior Court of Delaware,
New Castle County.
Submitted: Oct. 9, 1985.
Decided: Feb. 21, 1986.

Paul H. Spiller, of Kimmel, Spiller & Weiss, Wilmington, for plaintiffs.

Robert J. Katzenstein, and Anne Bookout Horgan, of Lassen, Smith, Katzenstein & Furlow, Wilmington, for defendant.

GEBELEIN, Judge.

This action involves a claim of medical malpractice relating to defendant's treatment of plaintiff Linda Mullins before, during and after the birth of her child on April 4, 1984. Suit was filed on February 28, 1985 by Mrs. Mullins and her husband.

Plaintiffs have moved to compel discovery of three types of documents withheld from production by the defendant: (1) transcripts of two telephone conversations between John Goode Haring, Esquire, a claims attorney for Insurance Corporation of America ("ICA"), and the defendant; (2) a claims progress record compiled by Mr. Haring and his successor, William J. Kam-bic, an attorney and ICA's Regional Vice-President for Claims; and (3) two letters from Mr. Kambic to the defendant. The defendant has withheld these documents from production on the ground that they represent "work product" and are not, therefore, discoverable under Superior Court Civil Rule 26(b)(3).

The plaintiffs make several arguments in support of the motion to compel discovery. Plaintiffs argue that the documents sought were prepared before litigation was formally commenced; therefore, litigation was neither a substantial probability nor imminent and the documents are not immune from discovery under the work product doctrine and Rule 26(b)(3). Further, the plaintiffs contend that any report or statement made by a party's agent, but not requested by nor prepared for an attorney, nor which otherwise reflects an attorney's legal expertise, must be conclusively presumed to have been prepared in the ordinary course of business and not in anticipation of litigation. In the alternative, the plaintiffs argue that even if the work product doctrine is held to apply to the documents withheld by the defendant, at least as to the statements sought, the documents are discoverable because the circumstances of this case indicate substantial need and undue hardship thereby justifying production under Rule 26(b)(3).

The defendant responds: (1) that all the documents are work product; (2) that the plaintiff has not shown substantial need or undue hardship in order to justify production; and (3) that the documents are absolutely privileged to the extent that they contain the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party. Specifically, the defendant argues that the Delaware Courts have rejected the requirement that an attorney be involved in the acquisition or preparation of any document in order for it to be protected as work product. Defendant contends that the documents sought in this case may not, therefore, be conclusively presumed to have

been made in the ordinary course of business. Further, the defendant asserts that in this medical malpractice case, in contrast to the insurance cases relied upon by the plaintiffs, the likelihood of litigation was substantial and imminent. Moreover, as to all but the June 27, 1984 telephone conversation, the defendant argues that the documents sought were prepared at the direction of the defendant's present attorneys and are, therefore, even under plaintiff's theory of the case, immune from production under Rule 26(b)(3). Also, to the extent that the documents contain mental impressions of the ICA attorneys, the defendant asserts that the documents sought are absolutely protected from discovery under Rule 26(b)(3). Finally, defendant contends that the plaintiffs have failed to meet the requirements of Rule 26(b)(3) of showing substantial need and undue hardship.

A resolution of the issues presented by this case requires a brief review of the history of the work product doctrine and the interpretation of Rule 26(b)(3) relating to trial preparation materials adopted by the Delaware courts. Prior to the landmark decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), under the Federal discovery rules, the Federal courts, and the courts of the many states which had adopted the Federal rules, "for various reasons and to varying extent, held that the results of investigations or other information or matters secured or prepared by an adversary or his representatives in contemplation of litigation or in preparation for trial were not the proper subjects of discovery." 8 Wright & Miller, *Federal Practice and Procedure*, § 2021 at 179. At the same time, some courts held that "information obtained or prepared as the result of an investigation in anticipation of litigation or in preparation for trial was generally subject to discovery." *Id.* at 180. In *Hickman, supra,* the Supreme Court attempted to resolve the controversy by recognizing a qualified immunity for discovery for a lawyer's work product, making such material discoverable only on a substantial showing of "necessity or justifi-

cation." *Id.* at 188, citing *Hickman, supra,* 329 U.S. at 510, 67 S.Ct. at 393. The Court also drew a distinction for work product that reflected the mental impressions or opinions of the lawyer, which was, for practical purposes, given absolute immunity from discovery. *Id.* The Court's decision in *Hickman* left open many questions, however, and the subsequent decisions of the lower Federal courts, and those State courts following the Federal rules, "went off in many different directions." *Id.* at 190.

In 1970, an amendment to the discovery rules proposed by the Advisory Committee on Civil Rules was adopted by the Supreme Court, which, though it made many changes in the rules, on the whole was a codification of the doctrine announced in the *Hickman* case and developed in later cases by the lower courts. *Id.* at 193. The 1970 amendments were adopted in Delaware in the same year. *Superior Court Civil Rule* 26(b)(3). Rule 26(b)(3) contains the provisions relating to the discovery of trial preparation materials. Relevant to the case before the Court are those provisions defining the class of materials that are given protection as "factual" work product and setting forth the showing required to obtain discovery of this type of work product material. *Id.*

Professor Moore notes in his treatise on Federal Practice that material which is appropriately classified as work product can be divided into two general categories: (1) "factual" work product, and (2) "opinion" work product, that is, material containing an attorney's mental impressions, conclusions, opinions or legal theories. 4 *Moore's Federal Practice* (1980 ed.) at 26–361, 362. In this case, in the plaintiffs' motion to compel discovery, the plaintiffs' arguments relate primarily to "factual" work product. The Court will, accordingly, address the scope of discovery of "factual" work product and then turn to the issue of the requisite showing of substantial need and undue hardship necessary under Rule 26(b)(3).

Under Rule 26(b)(3), in determining what material is to be given protection as work product, the focus is on whether the "documents or tangible things" sought were "prepared in anticipation of litigation or for trial" and "by or for another party or by or for that other party's representative." *Superior Court Civil Rule* 26(b)(3). *See also*, Wright & Miller, *supra*, § 2024 at 197. No question is raised in this case as to whether the statements, reports and letters sought are "documents or tangible things." The key question in this case is whether the "documents or tangible things" sought are within the scope of the codified work product doctrine, Rule 26(b)(3), in that they were prepared by the defendant's malpractice carrier and before suit was formally commenced.

The work product protections of Rule 26(b)(3) extend only to "documents or tangible things ... prepared in anticipation of litigation or for trial." The Advisory Committee Notes to the 1970 Amendments to the Federal Rules state: "Materials assembled in the ordinary course of business, ... or for non-litigation purposes are not under the qualified immunity provided by Rule 26(b)(3)." *See APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 15 (D.Md.1980), citing 48 F.R.D. 487, 501 (1970). This is so even though litigation is already in prospect. *APL supra* at 15; Wright & Miller, *supra*, § 2024 at 198–199. At the same time, under the 1970 amendment to Rule 26(b)(3), work product protection applies not only to documents prepared by an attorney in anticipation of litigation, but also to documents prepared "by or for a representative of a party, including his agent." *APL, supra* at 15; Wright & Miller, *supra*, § 2024 at 206.

In spite of these seemingly clear statements regarding the applicability of the work product doctrine, several courts have held "that while documents prepared by a non-attorney can be deemed to have been prepared 'in anticipation of litigation,' they can only be so deemed if they were authored after consultation with an attorney." *APL, supra* at 16.

In *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372 (N.D. Ill.1972), the Illinois District Court held that

*any* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise, must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of Rule 26(b)(3) ... (Emphasis in original.)

In accord, *Conley v. Graybeal*, Del.Super., 315 A.2d 609 (1974); *Brandywine Shoppe v. State Farm Fire and Casualty Co.*, Del.Super., 307 A.2d 806 (1973); *Hopkins v. Chesapeake Utilities Corp.*, Del.Super., 300 A.2d 12 (1972).

In an unreported opinion, *Roeper v. Greggo & Ferrara, Inc.*, Del.Super., C.A. No. 77–OC–108, Christie, J. (August 28, 1978)[1], this Court rejected the notion that an attorney's involvement is necessary in order to protect statements as prepared in "anticipation of litigation." The Court observed that "the difficulty of distinguishing materials prepared in anticipation of litigation from those prepared in the ordinary course of business has led to conflicting interpretations of the statutory term 'anticipation of litigation.'" *Roeper, supra* at 3. Numerous courts have cited *Thomas Organ* with approval and adopted the position that Rule 26(b)(3) does not protect documents prepared by a non-attorney prior to consultation with counsel. *APL, supra* at 16. In *Roeper*, however, this Court held that "while an attorney's involvement may

---

1. *Roeper* was a personal injury action involving an automobile accident. The items sought to be discovered in that case were four statements taken by an insurer's claims representative more than a year after the accident in question. As in this case, the statements were taken after a letter had been received from plaintiff's attorney.

indicate that litigation is anticipated, it is by no means conclusive of the matter." *Roeper, supra* at 4.

Criticism of *Thomas Organ* by treatise writers was acknowledged by this Court in *Roeper.* In that opinion the Court quoted from the District Court opinion in *Spaulding v. Denton,* 68 F.R.D. 342, 345 (D.Del. 1975): "... Thomas's flat requirement of a lawyer's involvement raises a bump which the 1970 Amendments had smoothed over ...". *See Roeper, supra* at 3. Both this Court and the District Court agreed that: "[T]his interpretation appears to resurrect under the term 'ordinary course of business' the very distinction that the 1970 revision was designed to eliminate." 4 *Moore's Federal Practice* (1978–79 Supp.) at 60.

In addition, in *Roeper* the Court observed that the recent position of the Superior Court regarding the work product doctrine was that "the privilege under Rule 26(b)(3) is broader than had previously been supposed." *Roeper, supra* at 4, citing numerous unreported decisions.

In light of this shift in the position of the Court, the analysis provided in *Moore's Federal Practice* may be cited with approval: "The technical distinction between materials prepared by an attorney and those obtained by a claim agent or other representative of the party from whom discovery is sought has been eliminated." 4 *Moore's Federal Practice,* (1979 ed.) at 26–416. *See also.* Wright & Miller, *supra,* § 2024 at 204 ("[work product] protection should not depend on who obtained the statement ... the 1970 amendment expressly extends protection to documents prepared by or for a representative of a party, including his agent.")

Borrowing the language of *APL, supra,* the position of this Court may be stated as follows:

... the standard to be applied in determining whether the material is protected from discovery because prepared in anticipation of litigation is the same whether the document is prepared by an attorney, or by a non-attorney, either with or without prior consultation with counsel. *APL, supra* at 17.

At the same time, as noted in *Roeper, supra,* and stated in *APL, supra:*

[t]he fact that the non-attorney did or did not consult with counsel during the preparation of the document in question is, however, relevant though not conclusively determinative, as to whether the document was prepared in anticipation of litigation.

*APL, supra* at 17; *see Roeper, supra* at 4. Contrary to the plaintiffs' contentions, this Court in another unreported decision, *Porter v. International Harvester Company,* Del.Super., C.A. No. 78C–OC–107, Bifferato, J. (July 31, 1979), did not decide the issue of whether the work product doctrine requires the involvement or initiation of counsel.[2]

The critical question in resolving a discovery dispute is, then, not whether an attorney is involved, but whether the documents or things sought were prepared in anticipation of litigation. *Roeper, supra* at 4. Contrary to the view of the plaintiffs, the qualified work product immunity of Rule 26(b)(3) extends not only to non-attorneys, but also to material prepared before litigation commences. *Id.* The difficulty is in determining whether the requirement has been met. At what point before the formal initiation of a suit does a party shift from merely representing a client in general to representing a client in regard to a specific claim? This Court has noted that "it would be difficult to formulate an all inclusive general rule of interpretation." *Roeper, supra* at 5. The Court cited with

---

**2.** *Porter* involved an action filed based upon injuries suffered by plaintiff in an accident that occurred when he was working to repair his pickup truck. The items sought to be discovered included oral statements or reports by de-

fendant's employees to counsel. The Court noted that defendant had failed to make any positive showing that the reports were gathered in anticipation of litigation.

approval the decision of the District Court in *Spaulding, supra,* where the Court stated:

> Should any rule-of-thumb approach become the general rule, it is not hard to imagine insurers mechanically forming their practices so as to make all documents appear to be "prepared in anticipation of litigation." This result being contrary to the drafters' intent, Courts would be compelled in any event to look at the facts of each case. *Id.* at 345–346.

In *In Re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3rd Cir.1979), the Third Circuit Court of Appeals discussed the "work product" doctrine and provided the following synopsis of the law:

> * * * Courts and commentators have offered a variety of formulas for the necessary nexus between the creation of the material and the prospect of litigation. *See, e.g., Home Insurance Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga. 1977) (must be a "substantial probability that litigation is imminent"); *In re Grand Jury Investigation (Sturgis), supra* [412 F.Supp. 943], at 948 [ (E.D.Pa. 1976) ] (threat of litigation must be "real and imminent"); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 47 F.R.D. 334, 337 (S.D.N.Y.1969) (prospect of litigation must be "identifiable"); 4 Moore's Federal Practice ¶ 25.-63[2.-1], at 26–349 (1970) (litigation must "reasonably have been anticipated or apprehended"). Professors Miller and Wright offer an attractive formulation based on the purpose of the work-product doctrine itself:
>
> > Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.
>
> 8 Wright & Miller, *Federal Practice and Procedure:* Civil § 2024, at 198 (1970).

Cases involving insurance companies present particularly tricky questions of determining at what point "an insurance company's activity shifts from the ordinary course of business to anticipation of litigation." *Westhemeco Ltd. v. New Hampshire Insurance Co.,* 82 F.R.D. 702, 708 (S.D.N.Y.1979). In *Spaulding, supra,* the Delaware District Court declined to follow the decision cited by the defendant in this case, in which the Court held that statements taken by a claim agent immediately after an accident are taken in anticipation of litigation. *See Almaguer v. Chicago R.I. & P.R. Co.,* 55 F.R.D. 147, 148–49 (D.Neb.1972). The Delaware District Court felt *Almaguer* went too far "to immunize materials prepared when litigation was only a contingency." *Spaulding, supra* at 345. Similarly, in *APL, supra,* the Maryland District Court observed:

> [t]he courts have repeatedly recognized that, while litigation often results from an insurance company's denial of a claim, it cannot be said that any document prepared by an insurance company after a claim has arisen is prepared in anticipation of litigation within the meaning of Rule 26(b)(3).
>
> *Id.* at 17.

Nevertheless, the Maryland Court continued:

> [that] is not to suggest that all documents prepared by an insurance company in investigating a claim, are, by definition, compiled in the ordinary course of business and, thus, automatically subject to discovery. *Id.* at 18.

In *Roeper* this Court quoted the language of *Home Insurance Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977) that there must be a "substantial probability that litigation will occur and that commencement of such litigation is imminent." *Roeper, supra* at 4–5. *See also, Miles v. Bell Helicopter Co.,* 385 F.Supp. 1029, 1033 (N.D.Ga.1974). Still, the Court must do more than weigh the likelihood of litigation. The Court must consider, "whether, in light of the nature of the document and the

factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In Re Grand Jury, supra,* citing Wright & Miller, *supra* § 2024 at 198. This determination must be made keeping in mind that the purpose of this discovery rule is to protect the integrity of the adversary process. *Hercules v. Exxon Corp.,* 434 F.Supp. 136, 150–51 (D.Del.1977). "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman, supra,* 329 U.S. at 516, 67 S.Ct. at 396 (Jackson, J., concurring). In addition, "an attorney or party's agent should not be deterred from adequately preparing for trial because of the fear that their efforts will be freely disclosed to opposing counsel." *Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725, 732 (Supr.1983) citing *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. At the same time, "the rules should be construed to allow discovery of all relevant information, so that issues may be tried on the true facts." *Id.,* 670 P.2d at 732.

In *Brown, supra,* the Court rejected the use of a single test to determine whether material was prepared in anticipation of litigation and enumerated several facts to be considered in determining whether material is prepared in anticipation of litigation.

First, courts should consider the nature of the event that prompted the preparation of the materials and whether the event is one that is likely to lead to litigation.... Second, courts should determine whether the requested materials contain legal analyses and opinions or purely factual contents in order to make inferences about why the document was prepared. Third, courts should ascertain whether the material was requested or prepared by the party or their representative ... [W]hen litigation is anticipated it is expected that an attorney or party will [have] become involved. Fourth, courts should consider whether the mate-

rials were routinely prepared and, if so, the purposes that were served by that routine preparation ... Last, courts should examine the timing of the preparation and ascertain whether specific claims were present or whether discussion or negotiation had occurred at the time the materials were prepared.

*Id.,* 670 P.2d at 733, quoting Note, Work Product Discovery: A Multifactor Approach to the Anticipation of Litigation Requirement in Federal Civil Procedure 26(b)(3), 66 Iowa L.Rev. 1277, 1287 (1981).

The use of terms like "substantial probability" of "imminent" litigation, while descriptive in a particular case, do not resolve the issue of when, in the next case, litigation may be said to have been anticipated. The Court must consider the facts of each case.

■ Turning now to the facts of this case, it is clear that the plaintiffs' cause of action for medical malpractice against the defendant arose out of the April 4, 1984 delivery of the plaintiffs' child. Subsequently, on April 24, 1984, the defendant performed surgery on plaintiff Linda Mullins to repair a laceration of the rectum allegedly caused during the April 4, 1984 vaginal delivery of plaintiffs' child, which surgery plaintiffs allege was not properly done. Plaintiffs also allege *inter alia* that the defendant was negligent in attempting a vaginal delivery, and in other aspects of his care of plaintiff Linda Mullins.

On June 25, 1984, the plaintiffs' attorney wrote to the defendant, Dr. Vakili, informing the defendant that he represented the Mullinses concerning procedures performed by the defendant during April 1984, and advising the defendant to "turn this letter over to your malpractice liability carrier and have a representative contact me." The plaintiffs' attorney also requested copies of all the defendant's office notes, reports and records concerning Linda Mullins. The letter was signed, but did not indicate that it came from a lawyer or a law office. On June 27, 1984, the defendant telephoned his malpractice liability in-

surance carrier and statements were taken by the adjuster, Mr. Haring, an attorney and employee of ICA. That same day, Mr. Haring contacted the attorneys presently representing the defendant and retained them to represent Dr. Vakili. On June 28, 1984, Dr. Vakili again spoke with Mr. Haring. The plaintiffs seek transcripts of these two telephone conversations, as well as a claim progress record prepared at that time, and two letters to Dr. Vakili from William Kambic, Esquire, Regional Vice-President of Claims for ICA, dated October 1, 1984 and March 12, 1985. The plaintiffs filed their claim in this Court on February 28, 1985.

The record in this case also contains the affidavits of William J. Kambic, an attorney and Regional Vice-President of Claims for ICA, and John Goode Haring, formerly a Claims attorney with ICA at all times relevant to this case. Mr. Kambic avers that the claims progress record sought by the plaintiffs "is a record on which the ICA claims attorney notes his periodic reviews of the file, telephone conversations with the insured, with plaintiffs' attorney, and with the insured's attorney." Mr. Kambic further attests that, "I often discuss in a claims record my evaluation of the merits of the case." Mr. Haring avers that it was his practice "to contact an attorney retained by ICA immediately upon receiving notice of a claim from an insured physician," and that, in this case, the defendant's attorney requested that Mr. Haring investigate the claims reported by the defendant, Dr. Vakili.

It is the opinion of this Court that based upon the facts of this case and the record presented, the documents sought by the plaintiff "can fairly be said to have been prepared or obtained because of the prospect of litigation" within the meaning of Rule 26(b)(3) and are, therefore, protected from discovery under the work product doctrine. Wright & Miller, *supra*, § 2024 at 198.

Tracking the analysis suggested in *Brown, supra,* the Court draws the following conclusions. First, the preparation of the materials sought by the plaintiffs was prompted by a letter the plaintiffs' attorney addressed to the defendant on June 25, 1984 informing the defendant that he represented the Mullinses in regard to the incidents of April 1984 involving the defendant's care of Linda Mullins. Unlike cases where the event prompting the preparation of documents is the event out of which the claim arises, i.e. the accident or injury itself, here the initiating event was the notification by an attorney of his representation of Dr. Vakili's patient. While an accident or injury which is the subject of an insurance claim may not necessarily lead to litigation and, thus, may not in every case support the conclusion that litigation was anticipated, when an attorney notifies a doctor two months after an incident out of which a claim arises that he represents the doctor's patient, it may be reasonably inferred that litigation of some sort is likely. Litigation is far more likely to be anticipated from an event such as the notification by an attorney representing a patient in regard to former care, than from the actual events relating to that care. There is substantial likelihood that the materials prepared in response to the plaintiffs' attorney's letter were prepared in anticipation of litigation.

Second, the materials sought include conversations and letters between the defendant and his representatives, and a claims progress record which the defendant's representative has averred contain his evaluation of the merits of the case. Nothing in the record establishes that these documents contain predominantly factual data rather than legal analyses and opinions. From this it can be inferred that the documents were prepared as part of the defendant's representative's investigation and evaluation of the defendant's case. Mr. Haring attests that it was his practice to immediately contact an attorney to represent an insured doctor upon notification of a claim. Medical malpractice claims, unlike other types of insurance claims, are not dealt with as routine claims of an insured against his own carrier. In medical malpractice, the claim is typically one of negli-

gence against a defendant doctor who is insured by a malpractice carrier. Even when a malpractice insurer recommends settlement and payment of a claim against a doctor, the doctor may insist on defending the charges of negligent care in a court proceeding. Unlike many types of insurance claims where fault is not an issue and litigation merely involves the interpretation and application of the terms of the policy and the liability of the insurer under the policy, in a medical malpractice case the issues center on the alleged negligence of the doctor with the insurer initiating the preparation of the doctor's defense and disputing any negligence on the part of the doctor.

Third, all the documents sought were requested or prepared by the defendant's representative or the defendant himself. Further, the involvement of the defendant's attorney from the earliest stages of the events which followed the plaintiffs' attorney's letter to Dr. Vakili, while not determinative, indicates, in this case, that litigation was anticipated.

Fourth, although it may be said that these documents were prepared in a routine manner because it is ICA's business to anticipate and to prepare for litigation, it is necessary to go beyond this conclusion and consider the purposes for which these documents were prepared. These documents were all prepared subsequent to notification by the plaintiffs' attorney that he represented the plaintiffs in regard to the care provided by the defendant two months earlier. The plaintiffs' attorney did not reveal that he was an attorney or a member of a law firm. This, however, does not conceal the fact that he was representing plaintiffs in regard to a specific claim which, in all likelihood, would be the subject of a suit. Whether or not ICA's activity can be characterized as "routine", it is reasonable to conclude that these documents were prepared either for litigation or for trial and not in the ordinary course of business. A specific claim was present and although the plaintiffs' attorney did not participate in discussion or settlement negotiation prior to the time the materials were prepared, to conclude that the documents sought were not prepared in anticipation of trial would exalt form over substance.

■ The defendant has established that all the documents sought were prepared in anticipation of trial. The Court must, therefore, address whether the plaintiff has established substantial need and undue hardship in regard to the conversations between Dr. Vakili and Mr. Haring, thereby justifying production under Rule 26(b)(3).

The plaintiffs argue that statements taken shortly after an incident are unique in that they provide an immediate impression of the facts, and that a deposition taken substantially later is not an equivalent. In this case, the relevant incidents occurred in April 1984 and the statements sought were made in late June 1984, two months later. Plaintiffs' argument is not persuasive in this case as the statements sought were not an immediate impression of the facts, but rather conversations between the defendant and his insurer concerning a claim which he had notice was likely to result in a lawsuit. As the statements sought are not unique, immediate impressions of the facts as argued by the plaintiffs, the plaintiffs have failed to establish that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means" as required under Rule 26(b)(3).

The plaintiffs seek production of documents clearly prepared by the defendant and his representatives in anticipation of litigation or for trial and not merely as records of events which might only have possibly led to litigation. The plaintiffs do not assert any circumstances indicating substantial need or undue hardship. Production of the documents sought is, accordingly, not justified under Rule 26(b)(3).

Plaintiffs' motion to compel discovery is, accordingly, denied.

IT IS SO ORDERED.