**SHAKLEE CORPORATION, Plaintiff, Appellee, Cross-Appellant,**

v.

**El Marie GUNNELL and Franklin Gunnell, Defendants, Appellants, Cross-Appellees.**

Nos. 82–1380, 82–1381.

United States Court of Appeals, Tenth Circuit.

Nov. 16, 1984.

Daniel P. O'Keefe of Dorsey & Whitney, Minneapolis, Minn. (Roger J. Magnuson of Dorsey & Whitney, Minneapolis, Minn., Robert B. Hansen of Cannon, Hansen & Wilkinson, Salt Lake City, Utah, with him on the brief), for defendants, appellants, cross-appellees.

John E. Carne of Crosby, Heafey, Roach & May, P.C., Oakland, Cal. (E. Scott Savage and Samuel O. Gaufin of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for plaintiff, appellee, cross-appellant.

Before SETH, DOYLE and McKAY, Circuit Judges.

SETH, Circuit Judge.

This appeal arises from a suit brought by the plaintiff corporation against two individuals who had been active in plaintiff's direct selling program. Plaintiff's complaint alleged causes of action for defamation, product disparagement, unfair competition, and willful interference with its business. The complaint was based on statements made by the defendants at meetings, to individuals, and in a variety of circumstances. Some of the statements had been recorded at meetings and during conversations.

The defendants brought a cross-action for wrongful termination of their distributorship contract with plaintiff, for retirement rights, and also for defamation.

The jury found for the plaintiff; the trial judge found for defendants on the contract termination issue. Both parties have appealed.

The trial was preceded by a series of hearings and discussions on the scope of discovery. This concerned for the most part the discovery sought by the defendants. This comprises several hundred pages of the record. It would serve no purpose to detail the positions of the parties except to note that plaintiff sought to narrow discovery to one or two subjects. The complaint in part alleged defamatory statements made by the defendants over a period of time and in a variety of circumstances, as mentioned.

The basic order issued by the trial court was dated November 14, 1979. There was a later hearing on discovery in August 1980 but it did not change the November 14 order. This order limited discovery for all practical purposes to two questions: (1) whether an alfalfa product of plaintiff contained sugar; (2) whether a calcium product of plaintiff could be assimilated by the human body.

The discovery by defendants was thus limited to these two subjects which had been included with many other matters in the statements made by defendants. Other subjects in their statements were excluded, such as plaintiff's health claims for other products, health hazards and other product claims including claims as to the alfalfa product and calcium product referred to, and the qualifications of plaintiff's officers as represented to the public as to skills and education. The defendants sought mandamus in this court to have the deposition not so limited.

Thus before trial the court made the relevance determinations included in the November 14 order, and discovery was so limited to sugar in alfalfa and assimilation of a calcium product. The parties went to trial on that basis. The trial thereafter began and when the plaintiff was into its case it became evident that the case was expanding by ruling on admissibility and testimony soon was directed to statements the defendants had made on a variety of subjects. This testimony went beyond the initial relevancy determination the court had made as to discovery sought by defendants. There was thus a wide departure by the proof and the court's rulings from the sugar in alfalfa and the assimilation of calcium. It went to all public statements defendants had made and conversations which had been taped.

The plaintiff in its responsive and reply brief when presenting another subject lists witnesses who gave direct testimony in its case in chief. This list demonstrates the departure which had taken place in the trial from the initial relevancy determination. This list at footnote 17 of plaintiff's brief includes testimony by named witnesses who heard defendants say "that Shaklee was a hoax"; that the FDA "was about to make a seizure at Shaklee"; that "products were adulterated"; that the products were "no good"; that they "contained a petroleum base"; and "several tape recordings of the Gunnells making such statements were authenticated by those present at the meetings they recorded, and these tapes were played to the jury."

The trial court thus adopted a different relevancy standard as the trial progressed than applied to discovery. The business interference causes of action, the unfair competition cause, product disparagement and breach of contract issues all generated inquiry into issues beyond those contemplated by the court at the outset.

Defendants had to meet the expanded case as it went along and the statements attributed to them by the testimony and by the tapes. This included the "hoax," the "fraud," the "sham" and "lack of integrity" statements and qualifications of plaintiff's officers. These matters and those detailed by plaintiff (as referred to above) were matters which during the trial thus became relevant. The plaintiff also had a problem with the expansion of the case by the rulings on relevancy. The trial court was aware of the change in the case which was taking place during plaintiff's case in chief. At transcript page 2,962 the court was concerned with "hoax" and "fraud" evidence, acknowledged the issue was present, and said:

"And I think the area of admissibility is very broad under hoax and fraud."

The complaint sought damages for statements by defendants. These damages were for all the statements, not for part of them. Plaintiff's witness testified as to all the damages plaintiff had suffered from all defendants' statements. The truth of the statements became an issue. The damage aspect of the case expanded the issues.

The defendants argued that they were prejudiced by the new relevancy position taken by the trial court (Tr. 1,306–09) in that they could not prepare a defense to the new subjects without discovery. The defendants made a direct request for additional discovery (Tr. 1,294–5) and some was granted at trial on a particular subject. However, there is no basis in the record that defendants in any way waived the objection to the departure of the proof from the discovery limitations.

The plaintiff would have us consider this as simply a sufficiency of the evidence case but that cannot be done because that issue cannot be reached if the trial court did not allow the defendants to prepare their defense as permitted by the rules.

Thus the basic issue on appeal is whether the denial of discovery to the defendants was prejudicial and did not enable them to have a fair trial. It is the difference between the relevancy determinations made by the trial court for a limitation of discovery and that applied during the course of trial. Matters or subjects at the time of discovery were ruled not to be then relevant but became relevant at trial and were included in plaintiff's case in chief. This may have been inevitable considering the nature of the several causes of action.

There was an erroneous denial of discovery as the matter ultimately developed. Such a denial is ordinarily prejudicial. *Weahkee v. Norton,* 621 F.2d 1080 (10th Cir.). It is not possible to determine here whether the outcome would have been different had discovery been permitted. There were many statements on diverse subjects testified to at trial as described above which were excluded by the narrow scope of the order limiting discovery. These were significant subjects and concerned many statements attributed to defendants. The diversity and scope of the trial testimony as compared to the subjects as to which discovery was permitted makes it impossible to determine whether the result would have been different had discovery been permitted. We are not faced with but a limited variation or with but one or two subjects but instead a large part of the proof.

■ It is apparent that the trial court had broad discretion as to the control of discovery, *Smith v. Ford Motor Co.,* 626 F.2d 784 (10th Cir.), *Voegeli v. Lewis,* 568 F.2d 89 (8th Cir.), and rulings will not be set aside short of an abuse of discretion. *See Burns v. Thiokol Chemical Corp.,* 483 F.2d 300 (5th Cir.). We must hold that there was a denial of discovery sought by the defendants that precluded a fair trial and the judgment must be set aside.

■ The determination of the "retirement" was made by the trial court and is the subject of a cross-appeal. The issue was basically a matter of law—a construction of the distributor's contract. The record indicates, however, that the view of the trial court on the implications of a breach and the consequences of certain provisions were so closely related to the case submitted to the jury that inconsistencies arose. This determination by the trial court on this issue must be set aside and remanded for a new determination.

The judgments are set aside and the case is remanded for a new trial and for further proceedings by the trial court.