Pearl H. STEFFENSEN, Plaintiff, Petitioner, and Cross–Respondent,

v.

SMITH'S MANAGEMENT CORPORATION, Defendant, Respondent, and Cross–Petitioner.

No. 910560.

Supreme Court of Utah.

Oct. 22, 1993.

Rehearing Denied Nov. 12, 1993.

Curtis C. Nesset, Richard B. McKeown, Bradley H. Parker, Salt Lake City, for plaintiff.

Chris A. Tolboe, Salt Lake City, for defendant.

HOWE, Associate Chief Justice:

We granted cross-petitions for certiorari to review the court of appeals' affirmance of a trial court judgment based on a jury verdict in favor of defendant Smith's Management Corporation. *Steffensen v. Smith's Management Corp.*, 820 P.2d 482 (Utah Ct.App.1991).

## I.  FACTS

Bradley Burnett entered a Smith's grocery store intending to shoplift. Gary Canham, the store's front-end manager, was standing in the middle of the store and observed Burnett coming from the produce department carrying beer and cigarettes. As Burnett walked toward the front of the store past Canham, they made eye contact with each other. Canham suspected that Burnett might attempt to leave without paying for the items he was carrying. Canham informed Paul Rompus, Smith's Drug King Manager, of his suspicion, and the two watched Burnett from the office area near the front of the store. Burnett believed the two Smith's managers were watching him so he stood in line at a checkout stand for a few minutes. The managers then assumed that Burnett intended to pay for the items, and their suspicions were momentarily abated. As soon as Burnett felt that he was no longer being watched, he left the check-out line and walked quickly toward the exit with the merchandise.

The two managers confronted Burnett and asked him to accompany them to the office. He agreed, but on the way, he suddenly "broke" toward the front exit, dropping the merchandise as he ran. Another Smith's employee tried to block Burnett, but as he did so, Burnett crashed into plaintiff Pearl H. Steffensen, who was standing near the front of the store writing a check. She fell, striking her head on the tile floor. She sustained severe injuries

that resulted in stroke-like paralysis over the entire left side of her body.

Steffensen commenced this action against Smith's, alleging that it was negligent in dealing with the shoplifter and that this negligence caused her injuries. At the conclusion of the presentation of evidence, Smith's moved for a partial directed verdict on the ground that Smith's failure to deter Burnett from shoplifting before he reached the check-out stand could not, as a matter of law, be a proximate cause of Steffensen's injuries. The court granted this motion and incorporated this ruling into jury instruction 36. The court allowed the jury to consider only Smith's conduct that occurred after the stop and detention of Burnett. At the end of the trial, the judge submitted written interrogatories to the jury. The jury found that Smith's acted negligently but that its negligence was not a proximate cause of Steffensen's injuries. Steffensen appealed to the court of appeals, which concluded that the trial court committed error by granting the partial directed verdict but that the error was harmless. *Steffensen*, 820 P.2d at 489–90. The court similarly held that instruction 32, concerning foreseeability, was erroneous but harmless. *Id.* Finally, the court held that the exclusion of expert testimony on employee training and deterrence was also harmless error and that the exclusion of testimony as to the apportionment of fault was correct. *Id.* at 491.

## II. ANALYSIS

### A. Partial Directed Verdict

Steffensen contends that the court of appeals erroneously applied a harmless error analysis after determining that the trial court should not have granted Smith's motion for a partial directed verdict. On the other hand, Smith's contends that the court of appeals erred in determining that the trial court erred in directing a partial directed verdict.

At trial, Steffensen proceeded on two theories of negligence. First, she contended that Smith's failed to adequately train its employees to deter Burnett from shop-

lifting prior to stopping him. Specifically, Smith's employees did not use deterrence techniques detailed in Smith's own policy, including making eye contact with and greeting suspected shoplifters and periodically calling for security over the intercom. Second, Steffensen asserted that Smith's actions following the stop and detention of Burnett were negligent. She argued that Smith's endangered the safety of its customers by chasing and attempting to stop Burnett after he fled and that these actions ultimately caused her injuries.

At the close of the evidence, Smith's moved the trial court for a partial directed verdict. The motion was grounded on the argument that even if its employees had been inadequately trained about the need for deterrence and failed to utilize deterrence techniques, such failure could not have been the proximate cause of Steffensen's injuries. The trial court granted Smith's motion and instructed the jury:

> You have heard testimony regarding events that occurred prior to the time of the stop of the shoplifter, Mr. Burnett. You are instructed that none of the actions of the Smith's employees prior to the stop and detention proximately caused plaintiff's injuries. Therefore, you must not take this testimony into consideration when deliberating and making your decision.

■ Both the trial court and the court of appeals evaluated the conduct of Smith's employees prior to the stop and detention of Burnett as to whether their conduct could be a proximate cause of Steffensen's injuries. We need not and do not enter into a proximate cause analysis because we conclude, as a matter of law, that Smith's had no legal duty to deter Burnett from shoplifting prior to the time he reached the check-out stand.

■ In *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991), we stated that a possessor of land must exercise due care and prudence for the safety of business invitees. We recognized that a business owner also has a duty to protect its customers from criminal acts by third par-

ties. *Id.* (citing Restatement (Second) of Torts § 344, cmt. f (1965)). However, "the duty does not arise until the business owner knows, or should know, that criminal acts are likely to occur." *Id.* While we have not heretofore had occasion to apply these and related rules in a case involving shoplifting, other courts have done so with varying results. *See* Annotation, *Liability of Storekeeper for Injury to Customer Arising Out of Pursuit of Shoplifter*, 14 A.L.R.4th 950 (1982); *Martin v. Piggly Wiggly Corp.*, 469 So.2d 1057 (La.Ct.App. 1985); *Jones v. Lyon Stores*, 82 N.C.App. 438, 438, 346 S.E.2d 303 (1986); *Passovoy v. Nordstrom, Inc.*, 52 Wash.App. 166, 758 P.2d 524 (1988). Most of these cases involve the issue of whether a storekeeper should have reasonably foreseen that a detained shoplifter would suddenly bolt and flee, injuring a customer in his flight from the store. *See* 62A Am.Jur.2d *Premises Liability* § 517 (1990). We have not found a case where, as here, an injured customer sued a storekeeper because the storekeeper failed to deter a suspected shoplifter, openly carrying merchandise, before he reached the check-out stand.

When Canham first observed Burnett in the store, the latter was carrying beer and cigarettes which he had apparently taken from the store's shelves. Burnett did not at any time try to secrete any item. Canham suspected that he was a shoplifter solely because of the area of the store from which he was coming. The record provides no explanation why that fact would raise any suspicion except that prior shoplifters had come from that area. Without more of a basis for suspecting Burnett to be a shoplifter, it would be wholly unreasonable to charge Smith's with the duty to approach him before he reached the check-out stand and deter him from leaving the store without paying for the items. Until a person has indicated by some objective evidence that he or she does not intend to pay for items in his or her possession, such as where the person conceals the items, no duty to approach and deter can arise. It would be an onerous burden for a storekeeper to be required to approach and deter every customer who the storekeeper

intuitively suspected might attempt to leave the store without paying for items which he was openly carrying toward the check-out stand. Such a burden would far exceed the duty stated in section 344, comment f of the Restatement and adopted by us in *Dwiggins*, i.e., no duty arises until the storekeeper knows or should know that a criminal act (like shoplifting) is likely to occur which might imperil the safety of customers (when the storekeeper attempts to apprehend and detain the suspect). *See Dwiggins*, 811 P.2d at 183.

■ Steffensen relies heavily on Smith's own policy which directed that employees on the sales floor should greet and make eye contact with customers, "especially those who are acting suspiciously," and to make use of the intercom system by calling for security from time to time. The calling gives the potential shoplifter "an uneasy feeling that security is in the store." This argument does not aid Steffensen. As we have already noted, Canham did make eye contact with Burnett as he walked past him. Burnett knew he was being watched and got in a check-out line. Also, Burnett was not objectively acting suspiciously. Canham's suspicion that he might be a shoplifter was only a "hunch" because of the area of the store from which he came. More importantly, the law fixes the legal duty owed by a storekeeper to its customers, and that duty cannot be altered by higher standards prescribed by the merchant for his or her employees. In a number of cases, it has been held that a merchant's policy for apprehending and detaining suspected shoplifters is not admissible when it conflicts with applicable statutory law. *Alvarado v. City of Dodge City*, 238 Kan. 48, 63, 708 P.2d 174, 185 (1985) (merchant should not be penalized for establishing higher standards for its employees than applicable statutory standards); *Jones v. Montgomery Ward & Co.*, 49 Or.App. 231, 236–37, 619 P.2d 907, 910 (1980). Similarly, the duty we adopted in *Dwiggins* is the standard to which Smith's is to be held.

*B. Jury Instruction on Foreseeability*

■ Steffensen next contends that the trial court incorrectly stated the law con-

cerning foreseeability in instructing the jury about her second theory of negligence, i.e., Smith's actions following the stop and detention. We review challenges to jury instructions under a "correctness" standard. *Steffensen*, 820 P.2d at 490. Jury instruction 32 stated:

> Foreseeability in these instructions means injury or harm, if any, to a customer which the defendant and its employees could have reasonably anticipated as the natural consequences of their actions, if any, even though they were not able to anticipate the particular injury which did occur. In determining what is foreseeable, you must determine *that the actions by Burnett were predictable by Smith's employees* and not just a mere possibility.

(Emphasis added.)

■ Steffensen argues that this instruction improperly focused on the specific actions of Burnett rather than on shoplifters in general. Like the court of appeals, we agree that the instruction was harmless error but for different reasons.

■ By directing the jury to examine the acts of a specific shoplifter in determining foreseeability, instruction 32 somewhat misstated the law. "What is necessary to meet the test of negligence and proximate cause is that it be reasonably foreseeable, not that the particular accident would occur, but only that there is a likelihood of an occurrence of the same general nature." *Rees v. Albertson's, Inc.*, 587 P.2d 130, 133 (Utah 1978); *Glenn v. Gibbons & Reed Co.*, 265 P.2d 1013, 1016 (Utah 1954). A business owner need not predict the exact injury that flows from his negligence. The foreseeability requirement is not so exacting. Because instruction 32 included a requirement that the jury find that Burnett's actions were predictable, it is possible that a juror could interpret such a requirement to mean that the precise accident was foreseeable. This is an erroneous characterization of our previous decisions.

The court of appeals recognized this error but concluded that it was harmless. *Steffensen*, 820 P.2d at 490. We agree

with the court of appeals that "the specific identity of the shoplifter is irrelevant to the question of foreseeability." *Id.* However, the court of appeals also reasoned that the error within instruction 32 was harmless because "the question of foreseeability goes to the issue of negligence, and the jury found Smith['s] negligent. Therefore, any error in defining foreseeability did not affect the jury's verdict." *Id.* We disagree with this reasoning and conclude that the question of foreseeability does not exclusively go to the issue of negligence, but that it similarly involves proximate cause. In *Rees*, we determined that foreseeability is required to meet the test of negligence *and proximate cause.* 587 P.2d at 133. In fact, foreseeability may relate to negligence, as proximate cause itself relates to negligence, but foreseeability is an element of proximate cause. *Black's Law Dictionary* 584 (5th ed. 1979). The court of appeals' harmless error analysis was oversimplified.

While we agree with the court of appeals that the mischaracterization of the law within instruction 32 was harmless error, we reach that conclusion on different grounds. Steffensen argues that this misstatement, coupled with an erroneous directed verdict, constrained the jury to find that Smith's did not proximately cause Steffensen's injuries. This argument is unpersuasive. First, as discussed previously, the directed verdict was proper. Second, instruction 32 itself remedied its own error of focusing on Burnett's specific acts. The sentence preceding the erroneous portion states, "Foreseeability in these instructions means injury or harm, if any, to a customer which the defendant and its employees could have reasonably anticipated as the natural consequences of their actions, if any, *even though they were not able to anticipate the particular injury which did occur.*" (Emphasis added.) This sentence correctly stated the law that only the general nature of the injury need be foreseeable.

■ The minor inaccuracy in instruction 32 which specifically referred to Burnett does not amount to prejudicial error. It

would have been natural for the jury, in any event, to evaluate the specific actions of Burnett in determining whether his criminal actions were foreseeable. No trial is perfect, and in many proceedings there is some technical error. However, to reverse a trial verdict, this court must find not a mere possibility, but a reasonable likelihood that the error affected the result. Even if the instruction had been worded correctly, there is no reasonable likelihood that the verdict would have been more favorable to Steffensen. *See State v. Verde*, 770 P.2d 116, 120 (Utah 1989). This technical error in instruction 32 does not undermine our confidence in the jury's verdict. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992).

### C. Exclusion of Expert Testimony

■ Finally, Steffensen complained to the court of appeals that the trial court erred in excluding portions of her expert testimony. First, the trial court would not allow expert testimony concerning Smith's employee training practices as they related to deterring shoplifters. Second, the trial court refused to admit expert opinion as to the relative proportion of fault between Smith's and Burnett. In reviewing these exclusions, the court of appeals incorrectly applied a "clear error standard." *Steffensen*, 820 P.2d at 490 (citing *Davidson v. Prince*, 813 P.2d 1225, 1230 (Utah Ct.App. 1991)). As to the two exclusions of expert testimony in this case, the proper standard of review is whether the trial court abused its discretion. *State v. Span*, 819 P.2d 329, 332 (Utah 1991); *Dixon v. Stewart*, 658 P.2d 591, 597 (Utah 1982). The court of appeals properly placed the burden on Steffensen to prove that there is a reasonable likelihood that the verdict would have been different if the trial court had allowed the expert testimony. *Steffensen*, 820 P.2d at 490–91.

The court of appeals held that since it was harmless error for the trial court to grant a partial directed verdict as to proximate cause, it was also harmless error for the trial court to exclude expert testimony as to Smith's training practices. *Id.* at 491. We have previously concluded that, as a matter of law, Smith's owed no duty prior to the stop and detention of Bennett. Therefore, any expert testimony as to Smith's training policies would go to establishing negligence and proximate cause at this earlier stage, when there was no duty. Since there was no duty, we need not reach the issues of negligence and proximate cause. The expert testimony as to the adequacy of Smith's training policy was therefore properly excluded.

The court of appeals affirmed the trial court's exclusion of expert testimony as to the apportionment of fault between Smith's and Burnett. The court determined that this issue should be left for the jury to decide. *Id.* Steffensen argues that the court of appeals interpreted the Utah Rules of Evidence too narrowly. Rule 704 states:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Utah R.Evid. 704. Steffensen reads this evidentiary rule to allow her expert testimony concerning apportionment of fault because ultimate issues are no longer in the sole province of the jury.

■ Rule 704 means that an expert witness's testimony is not excludable solely because it goes to an ultimate issue. This rule, however, does not mean that a trial court must admit all expert opinions addressing ultimate issues. Questions which merely authorize the witness to tell the jury what result to reach are not permitted. *Davidson*, 813 P.2d at 1231 (citing Fed. R.Evid. 704 advisory committee note). Likewise, the rule is not intended to allow a witness to give legal conclusions. *State v. Larsen*, 828 P.2d 487, 493 (Utah Ct.App. 1992). Even though experts can testify as to ultimate issues, their testimony must still assist the trier of fact under rule 702. Utah R.Evid. 702; *Span*, 819 P.2d at 332 n. 1. Opinion testimony is not helpful to the fact finder when it is couched as a legal conclusion. These extreme expressions of the general belief of the expert witness tend to blur the separate and distinct responsibilities of the judge, jury, and wit-

ness. There is also a danger that a juror may turn to the expert rather than the judge for guidance on the applicable law. *Larsen,* 828 P.2d at 493. "Thus, an expert generally cannot give an opinion as to whether an individual was 'negligent' because such an opinion would require a legal conclusion." *Davidson,* 813 P.2d at 1231.

Steffensen intended to have her expert allocate the actual percentage of negligence between Smith's and Burnett. The trial court did not abuse its discretion by excluding this testimony because, in this case, the apportionment of negligence between Smith's and Burnett was exclusively the jury's responsibility. *See Little America Refining Co. v. Leyba,* 641 P.2d 112, 114 (Utah 1982) (jury entrusted to resolve all relevant questions of fact including apportionment of fault.)

We affirm the result of the court of appeals' decision.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.