**Julia Lee ASKEW, Plaintiff and Appellant,**

v.

**Paul HARDMAN, Defendant and Appellee.**

No. 930537–CA.

Court of Appeals of Utah.

Oct. 11, 1994.

Rehearing Denied Dec. 2, 1994.

Gary A. Dodge, Mark F. James (argued), Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, for appellant.

Stephen G. Morgan, Mitchel T. Rice (argued), Morgan & Hansen, Salt Lake City, for appellee.

Before BENCH, BILLINGS and ORME, JJ.

BENCH, Judge:

Plaintiff Julia Lee Askew appeals the trial court's denial of her motion to compel defendant's insurance company to produce documents in its claim file. We reverse and remand for a new trial.

## FACTS

Late at night on November 20, 1989, plaintiff was seriously injured when the vehicle in which she was a passenger struck a horse. The horse, which belonged to defendant, had escaped from defendant's fenced pasture and wandered onto a public highway. Defendant contacted his insurance company, Utah Farm Bureau, which sent adjuster Robert Harmon to investigate the accident. Adjuster Harmon took some pictures and recorded a conversation he had with defendant. Deputy Jerry Monson, of the Utah County Sheriff's Office, also investigated the accident. Both adjuster Harmon and deputy Monson observed that a portion of the pasture fence was down.

Plaintiff brought an action against defendant alleging that he was negligent in the construction and/or maintenance of the pasture fence. Defendant maintained that the accident was caused by deer hunters who had knocked down his fence in order to pass over his property.

Prior to trial, plaintiff attempted to discover the contents of the file prepared for Utah Farm Bureau by adjuster Harmon. Utah Farm Bureau refused plaintiff's request claiming that the contents of adjuster Harmon's investigative file were prepared in anticipation of litigation and therefore protected from discovery by the work-product doctrine. Thereafter, the trial court denied plaintiff's motion to compel production of the information in adjuster Harmon's file. The jury returned a no-cause-of-action verdict in favor of defendant and this appeal followed.

## ANALYSIS

### Work–Product Doctrine

■ Plaintiff argues that the trial court erred by holding that the contents of adjuster Harmon's investigative file were prepared in anticipation of litigation and therefore protected by the work-product doctrine. We agree.

Rule 26(b)(3) of the Utah Rules of Civil Procedure provides, in relevant part:

[A] party may obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.

*Id.* For written materials to fall under the protection of the work-product doctrine, three criteria must therefore be met: "(1) the material must be documents and tangible things otherwise discoverable, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative." *Gold Standard, Inc. v. American Barrick Resources Corp.*, 805 P.2d 164, 168 (Utah 1990).

In *Gold Standard*, the Utah Supreme Court addressed the issue of whether a memorandum written as part of an accident investigation was entitled to work-product protection. The court stated that "[i]f in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery." *Id.* at 171 (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C.1982)).

Under *Gold Standard*, an accident report prepared in the ordinary course of business is clearly discoverable. Defendant argues, however, that adjuster Harmon's report is entitled to work-product protection because it was prepared at the request of Utah Farm Bureau's attorney and because all such re-

ports are prepared in anticipation of litigation. Utah has never addressed whether an insurance adjuster's report is, by its very nature, entitled to work-product protection. Because Utah's Rule 26(b)(3) is nearly identical to its federal counterpart, "federal interpretations of the rule are persuasive." *State v. Smith,* 817 P.2d 828, 829 (Utah App.1991); *accord Olson v. Salt Lake City Sch. Dist.,* 724 P.2d 960, 965 n. 5 (Utah 1986); *Salt Lake City v. Holtman,* 806 P.2d 235, 237 n. 2 (Utah App.1991).

In *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D.Ill.1972), the court addressed the question of whether documents prepared by an expert hired by Fireman's Fund American Insurance Companies to investigate a marine cargo loss were discoverable. Fireman's Fund argued that after an insurance claim has arisen, "litigation may be deemed a contingency and any document prepared after such a claim has arisen is prepared in anticipation of litigation ... irrespective of whether an attorney in the role of counsellor has been consulted...." *Id.* at 373. The court rejected Fireman's Fund's argument and stated, in pertinent part:

> An insurance company by the nature of its business is not called into action until one of its insured has suffered some form of injury and has a potential claim against some other party and/or the insurer itself. At this point, the insurer must conduct a review of the factual data underlying the claim, presumably through the talents of agents or employees who summarize the data for middle- or upper-management, the latter deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against a third party, or to reimburse the insured and forget about the claim thereafter. The logical absurdity of the plaintiff's position is that, under its theory, the amendments to the discovery rules which were believed to be a liberalization of the scope of discovery would be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds. We do not believe that Rule 26(b)(3) was designed to so insulate insur-

ance companies merely because they always deal with potential claims.

*Id.* The court went on to hold that "[o]nce we have determined that no document authored prior to the consultation of an attorney may be deemed to have been prepared in anticipation of litigation, it follows that the documents requested ... were not prepared in anticipation of litigation...." *Id.* The court further stated:

> The mere fact that Fireman's Fund may have anticipated the possibility of pursuing a subrogation claim against the defendants herein is a far cry from anticipating litigation.... It is a fact of common knowledge that an overwhelming majority of claims asserted by parties generally are amicably resolved and that only a very small portion of them rise to the level of disputes, let alone to the level of lawsuits. If every time a party prepared a document in the ordinary course of business to guide claim handling, this document was deemed to be prepared in anticipation of litigation, it is difficult to see what would be discoverable.

*Id.* at 373–74; *accord Binks Mfg. Co. v. National Presto Indus. Inc.,* 709 F.2d 1109, 1118–19 (7th Cir.1983); *Janicker,* 94 F.R.D. at 650.

Similarly, in *McDougall v. Dunn,* 468 F.2d 468 (4th Cir.1972), the court discussed the issue of whether statements made to an insurance adjuster during the course of an accident investigation were discoverable. Although the court ultimately decided the issue on other grounds, it rejected the insurance company's contention that the statements were prepared in anticipation of litigation and held that the statements were "secured by the claim adjuster in the regular course of his duties as an employee of the insurance company and presumably were incorporated in the files of the company." *Id.* at 473.

*Thomas Organ* and its progeny have been criticized by some courts for creating a hard and fast rule that insurance adjusters' reports are never entitled to work-product protection unless an attorney has participated in their preparation in anticipation of litigation. Courts disagreeing with *Thomas Organ* have generally adopted one of two other positions. The first group of courts have adopted a rule

contrary to *Thomas Organ*, holding that any "routine investigation of an accident by a liability insurer is conducted in anticipation of litigation." *Ashmead v. Harris*, 336 N.W.2d 197, 201 (Iowa 1983); *see, e.g., Fontaine v. Sunflower Beef Carrier, Inc.*, 87 F.R.D. 89, 92–93 (E.D.Mo.1980); *Almaguer v. Chicago, Rock Island & Pac. R.R. Co.*, 55 F.R.D. 147, 149 (D.Neb.1972); *Harriman v. Maddocks*, 518 A.2d 1027, 1033–34 (Me.1986); *Fireman's Fund Ins. Co. v. McAlpine*, 120 R.I. 744, 391 A.2d 84, 89–90 (1978). The second group of courts, recognizing the concerns of the *Thomas Organ* court about insulating insurance adjuster reports from discovery, but finding the *Thomas Organ* view too restrictive, have adopted a case-by-case analysis. *See, e.g., Suggs v. Whitaker*, 152 F.R.D. 501, 506 (M.D.N.C.1993); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 202 (M.D.Fla.1990); *Airheart v. Chicago & N.W. Transp. Co.*, 128 F.R.D. 669, 671 (D.S.D.1989); *Taroli v. General Elec. Co.*, 114 F.R.D. 97, 98–99 (N.D.Ind.1987); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 164 (D.Minn.1986); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 773–74 (M.D.Pa. 1985); *State Farm Fire & Casualty Co. v. Perrigan*, 102 F.R.D. 235, 238 (W.D.Va.1984); *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D.Md.1980); *Spaulding v. Denton*, 68 F.R.D. 342, 345–46 (D.Del.1975).

Utah has only slightly modified the rigid *Thomas Organ* approach, indicating that attorney involvement in the preparation of accident investigation documents is only one factor to be considered in determining whether the documents were prepared in anticipation of litigation and are therefore entitled to work-product protection. *Gold Standard*, 805 P.2d at 168–69. In *Gold Standard*, the Utah Supreme Court held that "the fact that no attorney was involved may suggest that a document was prepared in the ordinary course of business and not in anticipation of litigation." *Id.* at 169. The court set forth the test to be used to determine whether material was prepared in anticipation of litigation.

An inquiry to determine whether a document was prepared in anticipation of litigation should focus on the "primary motivating purpose behind the creation of the document." Under this standard, *"if the primary purpose behind the creation of the document is not to assist in pending or impending litigation," then work product protection is not justified.* The mere possibility that litigation may occur or even "the mere fact that litigation does eventually ensue" is insufficient to cloak materials with the mantle of work product protection.

*Id.* at 170 (citations omitted) (emphasis added). Under *Gold Standard*, therefore, the party asserting work-product protection must demonstrate that the documents were created to assist in pending or impending litigation. *See also Binks Mfg.*, 709 F.2d at 1118 (party asserting work-product doctrine has burden to demonstrate that documents in file were prepared in anticipation of litigation).

A number of other states have similarly held that an insurance adjuster's report is generally discoverable. *See, e.g., LaMonte v. Personnel Bd.*, 581 So.2d 866, 868 (Ala.Civ. App.1991) (documents compiled during investigation are not entitled to work-product protection unless produced in anticipation of litigation); *Langdon v. Champion*, 752 P.2d 999, 1007 (Alaska 1988) ("materials contained in an insurer's files shall be conclusively presumed to have been compiled in the ordinary course of business" and are not entitled to work-product protection); *Brown v. Superior Court*, 137 Ariz. 327, 335, 670 P.2d 725, 733 (1983) (insurance claim investigative documents not prepared in anticipation of litigation are not entitled to work product protection); *Hawkins v. District Court*, 638 P.2d 1372, 1377–78 (Colo.1982) (absent proof of pending litigation, insurance adjuster's report was prepared in course of ordinary business and thus discoverable); *Burr v. United Farm Bureau Mut. Ins. Co.*, 560 N.E.2d 1250, 1255 (Ind.Ct.App.1990) ("[b]ecause an insurance company has a duty in the ordinary course of business to investigate and evaluate claims ... the claim files containing such documents usually cannot be entitled to work product protection"); *Henry Enters. Inc. v. Smith*, 592 P.2d 915, 921 (Kan.1979) (initial investigation of claim made by insurance company prior to commencement of liti-

gation is not entitled to work-product protection); *McHugh v. Chastant*, 503 So.2d 791, 793 (La.Ct.App.1987) ("An insurer's file is not created in anticipation of litigation simply because it is only compiled after an accident has occurred and, therefore, at a time when litigation must be considered a possibility."); *Hall v. Goodwin*, 775 P.2d 291, 295–96 (Okla. 1989) (statement taken by insurer's attorney during course of accident investigation but not in anticipation of litigation was discoverable); *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 202–03 (Tex.1993) (documents not prepared in anticipation of litigation are not entitled to work-product protection).

In the present case, defendant has not established that the report of Utah Farm Bureau's insurance agent was prepared in anticipation of litigation. Defendant argues only that, in 1986, Utah Farm Bureau's attorney sent a letter instructing its claims agents on how to prepare claim reports in the event of litigation. This fact does not support defendant's argument that the particular documents prepared in this case were prepared at the request of an attorney. The attorney's letter merely advised Utah Farm Bureau as to how to conduct its affairs so it would be prepared if litigation became necessary. This is "a far cry" from an attorney's involvement in the handling of a specific claim after it arises. *See Thomas Organ*, 54 F.R.D. at 373. The fact that no attorney was involved in the preparation of the Askew claim file suggests that it "was prepared in the ordinary course of business." *Gold Standard*, 805 P.2d at 169.

Defendant has therefore failed to demonstrate that the documents were prepared to assist in pending or impending litigation. At most, defendant has demonstrated that the documents were prepared in the course of an accident investigation. Adjuster Harmon's report is therefore not entitled to work-product protection and the trial court erred by refusing to compel its production.

### Prejudice

Defendant argues that even if the trial court erred in denying plaintiff's motion to compel discovery of adjuster Harmon's claim file, such error was harmless. We disagree.

Generally, an erroneous decision by a trial court "cannot result in reversible error unless the error is harmful." *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992). In *Crookston v. Fire Insurance Exchange*, 817 P.2d 789, 796–97 (Utah 1991), the Utah Supreme Court defined harmless error as follows:

> "Harmless error" is defined ... as an error that is "sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." ... Put in other words, an error is harmful only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict.

*Id.* (citations omitted); *accord* Utah R.Civ.P. 61. The burden normally rests with the complaining party to show not only that the "error occurred, but that it was substantial and prejudicial in that the [complaining party] was deprived in some manner of a full and fair consideration of the disputed issues by the jury." *Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987).

However, the usual harmless-error analysis is inapposite where the trial court has erroneously denied a discovery request. In such situations, this court is required to presume prejudice unless it is shown that the denial was harmless. *Weahkee v. Norton*, 621 F.2d 1080, 1083 (10th Cir.1980); *accord Shaklee Corp. v. Gunnell*, 748 F.2d 548, 550 (10th Cir.1984). Prejudice is presumed because to require the requesting party to show that the error was harmful would place the requesting party in the untenable position of having to demonstrate that the contents of inaccessible information would have affected the outcome of the case. Because the requesting party does not have the information, he or she will never be able to demonstrate that the trial court's erroneous denial of a discovery request was anything but harmless.[1] The burden of demonstrating

---

1. In some settings, a trial judge might examine documents in camera to determine the import of their contents. However, this approach is unsatisfactory in this context. We are concerned not

that the erroneous denial of a discovery request was not prejudicial must therefore rest with the party resisting discovery. *See In re California Public Utilities Comm'n,* 892 F.2d 778, 783–84 (9th Cir.1989). Where we cannot determine from the record whether the requested documents might have changed the outcome of the trial, we cannot say that the error was harmless. *Weahkee,* 621 F.2d at 1083; *Shaklee Corp.,* 748 F.2d at 550. Because defendant has not demonstrated that the denial of plaintiff's discovery request was not prejudicial, and because we cannot determine from the record whether the requested documents would have changed the outcome of the case, the trial court committed prejudicial error in denying plaintiff's discovery request.

## CONCLUSION

The trial court erred in holding that adjuster Harmon's investigative file was prepared in anticipation of litigation and therefore protected by the work-product doctrine. Defendant has not demonstrated how the erroneous denial of plaintiff's discovery request did not prejudice the outcome of the trial, and the record is inadequate for us to determine that the requested documents would not have changed the outcome of the trial. The error was therefore prejudicial.

■ The trial court's ruling on the discovery request is reversed. The jury verdict is vacated and the case is remanded for a new trial.[2] Because of this disposition, we need not reach plaintiff's additional issues on appeal.

BILLINGS, J., concurs.

only with whether the requested information on its face might change the outcome of the trial, but also with what impact discovery of that information might have had on trial counsel's overall preparation and conduct of the trial. Only in the most clear-cut cases could any judge, without the benefit of trial counsel's thinking and strategy, make a determination as to whether information in the documents could aid the requesting party.

2. Without citing any support for its proposition, the dissent suggests the less drastic remedy of remanding the case to the trial court to allow

ORME, Associate Presiding Judge (dissenting):

I respectfully dissent. Because of a perceived *pre* trial discovery glitch, and the mere theoretical possibility that some earth-shattering evidence might have been found in the insurance adjuster's file, the majority gives plaintiff a new *trial.* Without regard to what plaintiff might actually have found in the file, plaintiff gets a whole new bite at the apple—a second chance to select jurors, interrogate and cross-examine witnesses, argue for and against jury instructions, and argue to a jury. Not only is this unfair to defendant, it needlessly burdens the system. A second staging of a 10–day jury trial is not something that should be required absent unavoidable necessity.

There is no such necessity in this case. The majority errs in presuming the existence of a smoking gun in the insurance file, when in fact all of the circumstances of the case indicate that no such evidence exists. The key issue for the jury was whether a horse escaped because trespassers knocked the fence down or because defendant was negligent in constructing and maintaining the fence. Persuaded by the evidence of deer entrails and tire tracks at the scene, the jury accepted the trespasser theory. The majority points to nothing likely to be found in the insurance adjuster's file that would probably have led the jury to the alternative conclusion.

Even if the trial court erred in ruling that the insurance file was protected by the work product doctrine, such an erroneous decision "cannot result in reversible error unless the error is harmful." *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992). *See Jenkins v. Weis,* 868 P.2d 1374, 1376 (Utah App.1994). As a general rule, an error is harmless unless appellant can demonstrate it was prejudicial

plaintiff the opportunity of demonstrating how she was prejudiced. Based solely on considerations of judicial economy in this case, the proposed remedy does have some appeal. However, that remedy would reverse the traditional burden of proof in this area of the law. *See, e.g., California Public Utilities Comm'n,* 892 F.2d at 783–84. In any event, we are aware of no case tried to a jury where the approach proposed by the dissent was used to cure the erroneous denial of a discovery request.

to her case, i.e., unless "there is a 'reasonable likelihood that the error affected the outcome of the proceedings.'"[1] *Steffensen v. Smith's Management Corp.*, 820 P.2d 482, 489 (Utah App.1991) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)), *aff'd*, 862 P.2d 1342 (Utah 1993). *See also* Utah R.Evid. 103(a) (error which does not affect substantial right of party is harmless); Utah R.Civ.P. 61 (same).

The majority would have us presume that the undiscovered evidence was pivotal to plaintiff's case. However, there is no indication that the undiscovered material contained even additional pertinent evidence, let alone evidence which would affect the outcome of the case. Plaintiff was able to obtain the photographs taken by adjuster Harmon and to depose him concerning his investigation of the fence site. She also deposed defendant and extensively cross-examined him at trial regarding the condition of the fence and the surrounding area, including testimony concerning tire tracks and deer entrails found at the site. The only other remaining witness, Deputy Monson, filed a police report on his observations and also testified at trial. In sum, even though plaintiff had access to all of the pertinent witnesses and physical evidence, she cannot point to any possible evidence or additional facts having any effect on her case that would have been gleaned through discovery of the insurance file.[2]

Instead, plaintiff contends that the usual rule on prejudice should not apply to her because—by reason of the very error of which she complains—she has been unable to learn the contents of the file and thus is unable to show what is there and how its admission into evidence—or how its leading to other admissible evidence—would likely have produced a more favorable result at trial. I appreciate that plaintiff now confronts something of a "Catch–22." However, the dilemma is largely of her own making, as viable procedural alternatives were available by which she could have preserved more of a record on which we could have meaningfully evaluated her claim of prejudice.

Plaintiff could have made a formal request that the trial court review the documents *in camera* and enter findings on any evidence contained therein. *See* Utah R.Civ.P. 26(b)(1), 26(c); *Madsen v. United Television, Inc.*, 801 P.2d 912, 915–18 (Utah 1990). Plaintiff might also have moved the trial court to require submission of the materials to the court, to be kept under seal for subsequent review by this court or the trial court if so ordered on remand. *See* Utah R.Civ.P. 26(c). *Cf.* Utah R.Evid. 505(d)(1) (court can seal and preserve privileged evidence for possibility of appeal).

In contrast, given the current posture of the case, plaintiff's appeal is based on the

---

**1.** Further defining the "reasonable likelihood" standard, the Utah Supreme Court has stated that "'[f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.'" *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992).(quoting *State v. Knight*, 734 P.2d 913, 920 (Utah 1987)). In making such a determination, "we must look beyond the mere fact of error and consider in totality all the evidence and proceedings below." *Steffensen v. Smith's Management Corp.*, 820 P.2d 482, 489 (Utah App. 1991), *aff'd*, 862 P.2d 1342 (Utah 1993). *Accord Hamilton*, 827 P.2d at 240.

**2.** In fact, the only possible evidence which might affect the outcome of the case would be if the undiscovered materials contain evidence of a conspiracy between the adjuster and defendant to obscure any possible indication of defendant's negligence in the construction of the fence by making it look like hunters had knocked it down. Were such a conspiracy to occur, it seems highly unlikely that the conspirators would document their efforts in the insurance file. By contrast,

where the record or the circumstances of the case suggest that the undiscovered materials are likely to be highly probative, it makes sense to presume prejudice because any error in prohibiting access to such information could readily affect the outcome of the case. Both cases primarily relied on by the majority are of this caliber. For example, in *In re California Public Utilities Commission*, 892 F.2d 778, 783–84 (9th Cir. 1989), Westinghouse Electric Corporation sought quarterly reports submitted by Southern California Edison Company to the California Public Utilities Commission concerning the progress of underlying litigation between Edison and Westinghouse in order to establish Edison's state of mind before and during the underlying lawsuits, an essential component of both Edison's fraud claim against Westinghouse and Westinghouse's counterclaim for abuse of process. Similarly, in *Weahkee v. Norton*, 621 F.2d 1080, 1082–83 (10th Cir.1980), plaintiff employee sought his employer's personnel files to compare employee evaluations and work performance in order to prove his discrimination and retaliation claims.

entirely speculative existence of evidence which might undermine the verdict against her. Because the possibility that such evidence will be found in the insurance file is so remote, and because plaintiff failed to take reasonable steps to preserve a better record of what the file contains, I would not employ the Tenth Circuit's *Weahkee* rule in this case and presume prejudice, thereby shifting to appellee the burden to show that production of the file would not have altered the outcome at trial. Rather, were it up to me, without treating the merits of the issue dealt with in the majority opinion, I would be tempted to hold any error in this regard to be harmless, given the record before us, and affirm the jury's verdict in favor of defendant. At a minimum, I would remand to the trial court with instructions to order production of the file and to give plaintiff an opportunity to explain what she would have done differently had she had access to the material in the file and to demonstrate how that may well have made her victorious at trial. But in no event would I give her a new trial absent some colorable indication of actual prejudice resulting from the discovery error, if there was one.