# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RAFAEL GUZMAN-ROSARIO,   )
  )
      Plaintiff,   )
  )
    v.   )     C.A. No. N22C-01-113 CEB
  )
CHARLIE'S WASTE SERVICES,   )
LLC, BLUE HEN DISPOSE-ALL,   )
LLC, BLUE HEN BUZZARDS   )
DISPOSE-ALL, INC., JEFFREY A.   )
BORNMAN, MAC ASSET   )
HOLDINGS, LLC, ZACH   )
EXCAVATING, INC., BILMORE   )
MATERIALS, and WILLIAM   )
CZACHOROWSKI, III,   )
  )
      Defendants.   )

Submitted: January 17, 2024
Decided: February 8, 2024

## MEMORANDUM OPINION

*Upon Consideration of Defendants' Motion for A Protective Order,*
**GRANTED.**

Gilbert F. Shelsby, Esquire, James J. Meehan, Esquire, Shelsby & Leoni, Wilmington, Delaware. *Attorneys for the Plaintiff.*

Timothy J. Wilson, Esquire, Stephen F. Dryden, Esquire Weber Gallagher Simpson Stapleton Fires & Newby, LLP., New Castle, Delaware. *Attorneys for the Defendants, Charlie's Waste Services, LLC, Blue Hen Buzzards Dispose-All, Inc., and Jeffrey A. Bornman.*

**BUTLER, R.J.**

## BACKGROUND

Plaintiff, a tractor trailer driver who was delivering large trash bins to a storage field in Delaware was injured while offloading the bins.[1] These bins had been manufactured in New Jersey and loaded onto a flatbed truck by the manufacturer. The Defendant is a company that markets these large bins and stores them at a site controlled by the Defendant.[2] The Plaintiff drove the flatbed onto the Defendant's land and an employee of the Defendant, Jeff Bornman, attempted to assist the Plaintiff in offloading the bins from the flatbed. In doing so, Bornman employed a large trash truck with a hydraulic lift, similar to a fork-lift, fitted to the front of the truck. In manipulating this fork-lift, Bornman pushed some of the stacked bins and they fell off the far side of the flatbed. Unknown to Bornman, Plaintiff Guzman was standing on the far side of the flatbed. He was struck and injured by the falling bins.[3] Guzman and Bornman were the only witnesses to the incident.

---

[1] Amend. Compl. ¶¶ 11–12.

[2] Amend. Compl. ¶¶ 2–5. Charlie's Waste Services, LLC., Blue Hen Dispose-All, LLC, and Blue Hen Buzzards Dispose-All, Inc, are all alleged to be trade names or related companies. These are the defendants that participated in the motion before the Court and will be referred to collectively as "the Defendant." The remaining defendants include the forklift/truck operator and others having some relationship to the ownership of the land in question. They have not participated in the briefing on this particular motion.

[3] Amend. Compl. ¶ 12.

The incident occurred on January 30, 2020.[4] That same day, Defendant's employee Bornman wrote an account of what happened, along with a rough diagram of the flat bed, the forklift, and the fallen bins. That account has been supplied to the Plaintiff in discovery.

On February 24, 2020, Plaintiff's counsel sent a letter of representation to the Defendant's insurer.[5] That notice recited that the Plaintiff had suffered injuries to his neck and back, a fractured right tibia, and had been taken by ambulance to Kent General Hospital.[6]

On March 2, 2020, Capstone ISG, a company hired by the insurer to report on the matter, submitted its report to the insurance company. That report contained, *inter alia*, a description of what occurred from the perspective of Bornman, which, while not a verbatim transcript, contained the substance of what Bornman observed and did. The report also appended some photographs of the scene of the incident – essentially an open field – and the trash truck with the forklift attachments.

The photographs taken by the insurance investigator were supplied to Plaintiff's counsel in response to discovery. The report itself was not. Plaintiff's counsel has taken the deposition of the insurance investigator. Plaintiff's counsel

---

[4] *Id.*
[5] *See* Def.'s Mot. for Protective Order, Ex. E, Trans. ID 70974342 (Sept. 27, 2023).
[6] *Id.*

also noticed a records deposition of Capstone seeking all documents concerning its claims examination, "including but not limited to any and all assignments, communications, emails, reports, notes, opinions, photographs, videos, claims files, adjuster's notes, materials and/or all other items which can be found in Capstone ISG's file track system."

Defendant's counsel has moved for a protective order to preclude disclosure of the records sought by Plaintiff from Capstone, arguing that the records sought were prepared in anticipation of litigation and are excluded from discovery pursuant to Rule 26(b)(3).

In response, Plaintiff points to the fact that Defendant produced 8 photographs that had been appended to the insurance investigator's report and, as such, Defendant waived any objection to the production of the rest of the report pursuant to D.R.E. Rule 510. Plaintiff's second argument in favor of disclosure relates to the fact that when the witnesses were deposed, they were unable to recall specifics about the photographs and so there is a "substantial need" for the full report.

The Court heard argument on Defendant's motion for a protective order and, after doing so, agreed to an *in camera* review of the insurance investigation report. Upon review, the Court had questions for the parties concerning the discoverability

of witness statements contained within the report. The Court has received a response from both sides.

## ANALYSIS

The defense posits that the investigator's report is protected by our civil procedural rules in Rule 26(b)(3), governing "trial preparation materials." The rule provides that ordinarily, a party may not discover documents and tangible things that are "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)."[7] They may be discovered notwithstanding this presumption, however, if 1) they are otherwise discoverable under the rules and 2) the party seeking discovery "has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[8]

The Plaintiff's response to the motion appears to accept the basic proposition that the report in question is "work product" and has focused his attention on two arguments: 1) Rule 510 of the evidence rules relating to waivers of the privilege and

---

[7] Super. Ct. Civ. R. 26(b)(3).
[8] Super. Ct. Civ. R. 26(b)(3).

2) "substantial need" under Rule 26(b)(3) relating to exceptions to the privilege in exceptional cases.

After some prompting by the Court about the nature of the privilege, particularly as it related to statements by witness(es) incorporated into the report, the Plaintiff responded further. Plaintiff claims that a witness' statement contained within the report – whether summarized or verbatim – is not entitled to the same work product protection the rest of the report is. Therefore, goes the argument, the court should order disclosure of the witness' statement or any synopsis thereof, notwithstanding the fact that other portions of the report may be work product. Because this argument comes late to the party, the Court will deal with it later.

In the meantime, the central arguments by Plaintiff are two: 1) there is a "substantial need" under Rule 26(b)(3)(2) and 2) waiver of the privilege due to a partial disclosure under Evidence Rule 510. We turn to these issues first.

### 1. Substantial Need

Plaintiff characterizes his request for the report as grounded in substantial need because of what he characterizes as confusion concerning the photographs produced from the report. To understand this, a little explanation is in order.

The photographs, taken by the insurance investigator, depict what appears to be an open field on a winter day. There are some photos of the trash hauling truck

with its forklift type attachment on the front, a large trash bin, and two individuals with their hoods up, faces blocked by their hoods and the bright backlighting. Plaintiff tells us that defense counsel has advised that the photographer was the insurance investigator, Bob Veazey. The two individuals are Jeff Bornman, the trash truck operator/witness, and the Defendant company's president, a Paul Pearson. All three have been deposed. According to Plaintiff's counsel, when each were shown the photos, none recognized the others or themselves, or could remember who took the pictures, when, or why.

Plaintiff says "presumably," the defense will attempt to rely "in some way" on the insurance investigator's report and the Plaintiff will be prejudiced because none of the witnesses could explain who the people in the pictures were. But the photos are not an effort to re-create the accident. If they were, and if the defense intended to use the photos for a re-creation of the incident, there might be more to discuss. Pictures of a trash truck, a trash bin, and a couple of men bundled up from the cold in a field in Delaware on a winter morning prove nothing. Their relevance is marginal. The report adds nothing to the relevance of the disclosed photographs. The Court does not find a substantial need for the body of the insurance investigative report based on the deponents' confusion over who was depicted in the photographs. That has already been sorted out through counsel and there is zero possibility that the report will shed any more light on the subject.

## 2. The Waiver Issue

Plaintiff says that disclosure of "any significant part of the privileged matter operates as a waiver of the privilege."[9]  Plaintiff claims that because the Defendant voluntarily disclosed the photographs appended to the report by the insurance investigator, the Defendant waived any claim of privilege to the rest of the report.

Plaintiff grounds his waiver argument on Delaware Rule of Evidence 510 "Waiver of Privilege or Work Product; Limitations on Waiver."  The rule provides that a person waives the privilege under the work product rule if s/he "intentionally discloses or consents to disclosure of any significant part of the privileged or protected communication or information."[10]

Here, the argument is that Defendant intentionally disclosed the photographs, which were part of the insurance investigator's file.  If that is the case, the rule provides that:

> When the disclosure waives a privilege conferred by these rules or work-product protection, the waiver extends to an undisclosed communication or information only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and

---

[9] *Clausen v. Nat'l Grange Mut. Ins. Co.*, 730 A.2d 133, 138 (Del. Super. 1997).
[10] D.R.E. 510(a).

(3) they ought in fairness to be considered together.

To be clear, the Court is not convinced that disclosure of the photos appended to the investigator's report was a partial waiver of materials to which the work product doctrine applies. But if the photos were part of the report, then we must consider the intentionality, the subject matter and the all-important issue of fairness.

In connection with Rule 510, the Third Circuit expressed this:

> Disclosing a communication to a third party unquestionably waives the privilege. A harder question is whether the waiver also ends the privilege as to any related but not disclosed communications. In answering this question, our touchstone is fairness. When one party takes advantage of another by selectively disclosing otherwise privileged communications, courts broaden the waiver as necessary to eliminate the advantage.[11]

Moreover, said the court, "courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly."[12]

This notion of fairness was discussed in *Tackett v. State Farm Fire and Cas. Ins. Co.*,[13] where the Delaware Supreme Court said "[i]n the context of the attorney-

---

[11] *In re Teleglobe Communications Corp.* 493 F.3d 345, 361 (3d Cir. 2007) (internal citations omitted).
[12] *Id.*
[13] 653 A.2d 254, 259 (Del. 1995).

8

client privilege, waiver rests on a rationale of fairness, *i.e.,* disclosure of otherwise privileged information by the client under circumstances where 'it would be unfair to deny the other party an opportunity to discover other relevant facts with respect to that subject matter.'"[14]

The Court does not find the disclosure of photographs was a "significant part of the report" to which they were appended. But even if it was, the Court does not find that the disclosure was intended to unfairly portray facts to the Plaintiff and thereby obtain some litigation advantage. If that were the case, perhaps a different result achieves. But because the Court does not find unfairness within the meaning of Rule 510(b)(3) in the non-disclosure of the rest of the investigative report, the Court will sustain Defendant's claim to work product privilege concerning the insurance investigator's file.

### 3. Witness Statements in Investigative Report

After its *in camera* review, the Court had questions concerning a portion of the report that recounted the witness Bornman's version of what happened. It is not a verbatim report, but rather the report writer's synopsis of Bornman's observations.

---

[14] *Tackett,* 653 A.2d at 259 (quoting *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 156 (D. Del. 1977)).

Plaintiff urges that so much of the report as recounts the witness' statement of the event to the insurance investigator should be disclosed. Plaintiff argues that this recitation of what happened does not implicate an attorney's mental impressions or strategic choices. Plaintiff cites the Court the case of *Charles v. Lizer*[15] for support.

In *Charles*, the Plaintiff sought an order compelling the defendant to provide a copy of a recorded statement the defendant had given to an investigator for Allstate, the defendant's insurer.[16] The Court relied on an earlier Superior Court ruling in *Conley v. Graybeal*,[17] which held that statements made to an insurance agent five days after an accident were made in the ordinary course of business because at the time, no attorney had become involved in the dispute when the statement was made.[18]

The *Charles* Court held that the statement given to the investigator was made in the ordinary course of business and was not subject to the work product privilege.[19] The Court was persuaded that the statement was not made in anticipation

[15] 2003 WL 21688306 (Del. Super. July 10, 2003).
[16] *Id.* at *2.
[17] 315 A.2d 609 (Del. Super. 1974).
[18] *Charles*, 2003 WL 21688306, at *2 (quoting *Conley*, 315 A.2d at 610).
[19] *Charles*, 2003 WL 21688306, at *2.

of litigation because no attorney had gotten involved in the dispute when the statement was given.[20]

*Charles* did not involve a motion for production of a report by the insurer. Rather, it was a motion to produce a statement made to the insurance investigator. And the proposition that an attorney's involvement is necessary in order for a statement to qualify for work product protection has been rejected in the Superior Court in other cases.[21]

The question the Court posed to the parties was whether a work product report can or should be subject to being segregated into portions, some of which are entitled to protection and some of which are not. Plaintiff did not cite a case involving the parsing of a report; he cited a case allowing access to a statement that was not a part of a report at all. The Court has not been directed to precedent permitting a dissection of a report into pieces that are work product and others that are not.

It would seem that Plaintiff had it right the first time: if a statement made to the work product report writer is worthy of disclosure to opposing counsel, the

---

[20] *Id.* Indeed, the Court went further, ruling that "if no transcript exists, the Defendant should provide [the insurer's] summary of the statement." *Id.* There are subtleties between direct, recorded statements and synopses of statements written by others, but because of the ruling made here, we can leave further scrutiny of that portion of the *Charles* ruling for another day.
[21] *See Roeper v. Greggo & Ferrara, Inc.*, 1978 WL 403442 (Del. Super. Aug. 28, 1978); *Mullins v. Vakili*, 506 A.2d 192, 195 (Del. Super. 1986).

statement should qualify as one demonstrating "substantial need" for disclosure. Excising a statement out of a report that is work product would be appropriate only in cases where the movant has made out a case of substantial need discussed above. If a witness claims a total loss of memory about the incident, but gave a lucid account to the investigator, that would be a different case.

Above, the Court made clear that Plaintiff's case for substantial need was limited to the fact that the witnesses couldn't pick themselves out of a photo taken at the scene of the accident several weeks after it happened. The Court held that was an insufficient case of substantial need for the whole report. There has likewise been no showing that the Plaintiff has a substantial need for the synopsis of the incident by the witness in the work product report.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendant's motion for a protective order to protect the insurance investigative file from disclosure to Plaintiff must be **GRANTED**.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Charles E. Butler, Resident Judge